### In re JAMISON BROS. & CO.

#### MacMORRIS v. McCURDY.

(Circuit Court of Appeals, Third Circuit. November 3, 1913. On Rehearing, December 19, 1913.)

#### No. 1753.

**1. BANKRUPTCY (§ 267\*)—WRONGFUL PLEDGE OF CUSTOMERS' SECURITIES BY BROKERS—RIGHTS OF OWNERS IN SURPLUS PROCEEDS.**

Bankrupts, who were brokers, wrongfully rehypothecated securities pledged with them by customers with a number of different lenders to secure loans made to them. After the bankruptcy, owners of certain of such securities were able to trace them into the hands of one or the other of such lenders, and by an order of the referee the surplus proceeds of the collateral, after paying the loans secured, was paid into a special fund. *Held*, that it was not a single fund in which all such owners were entitled to share, but that the amount paid in by each lender constituted a separate fund which belonged in equity to those only whose securities helped to produce it.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 371, 380; Dec. Dig. § 267.\*]

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

On Rehearing.

2. BANKRUPTCY (§ 228*)—REVIEW OF DECISION OF REFEREE—EFFECT OF RE-
VERSAL.

Where an order of a referee determined the principle on which a fund
should be distributed between those having claims thereon, a reversal of
such order and the adoption by the District Court of a different principle
of distribution affects alike all claims which stand on the same footing,
whether or not the claimants joined in the petition for review.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 387; Dec.
Dig. § 228.*

Appeal and review in bankruptcy cases, see note to In re Eggert, 43
C. C. A. 9.]

Appeal from, and Petition to Revise Order of, the District Court of
the United States for the Eastern District of Pennsylvania; John E.
Sater, Judge.

In the matter of Jamison Bros. & Co., bankrupts, in which George
McCurdy is trustee. Frank H. MacMorris appeals from, and petitions
to review, an order of the District Court. Affirmed.

The following is the opinion of the District Court by Sater, District
Judge (sitting by designation):

The case will be simplified if it be borne in mind that the only order made
by the referee which is on review is that of July 6, 1912. The preceding or-
ders stand unimpeached.

The only petition for review found among the papers is that filed by Sellers,
Shoemaker, Rowland, Radford, Prizer, Peel's executor, Hill, and McCurdy.
A party feeling aggrieved by any order made by a referee must, to secure
its reversal or modification, prosecute a petition to review such order. If he
fails to do so, he will not be heard to complain regarding it on a petition for
review filed by another party having a different interest. Loveland, Bank.
(4th Ed.) 222. In view of the foregoing and of In re McIntyre & Co., 176
Fed. 552, 100 C. C. A. 140, 24 Am. Bankr. Rep. 4, and some of the cases
cited to support the text in Jones on Collateral Securities (3d Ed.) § 512, cer-
tain complaints like those of M. D. Smith and John M. Wirgman as to the
sale of certain securities are unavailing. Claimants were at liberty by timely
action to test each and every of the referee's orders. If they failed to do so,
they may not stand upon another's petition for review.

The referee divided the claimants into two classes: (1) Those whose securi-
ties were unlawfully converted; (2) those whose securities were lawfully con-
verted. To acquire a standing in either class a party must trace his securi-
ties into the possession of a repledgee. This classification and his disposition
of the securities which were returned by Toland and identified by their own-
ers are correct.

Jones on Collateral Securities, § 512, announces the following rule, sus-
taining it by a citation of authority:

"When securities belonging to several persons have been rehypothecated to-
gether as security for a single loan, the pledgee taking them should proceed
pari passu in applying the securities to the satisfaction of the loan, so that
each of the several owners of the securities shall bear his just proportion of
the common burden. If such pledgee, without notice of the claims of the
true owners, sells the securities belonging to one, and therefrom satisfies the
claim for which he holds all the securities, leaving the others undisposed of,
a court of equity will order the remaining securities to be disposed of, and
the proceeds applied in such a manner that the burden of the loan will be
borne in equitable proportion by all."

A like rule was followed in Re McIntyre, 176 Fed. 552, 100 C. C. A. 140,
24 Am. Bankr. Rep. 4. The rule stated in it and by the above-named text-
writer was adopted and broadened in its application by the referee. Neither

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the McIntyre Case nor any of the cases cited by the text-writer were decided with reference to such a statute as that of Pennsylvania (Act of May 25, 1878, P. L. 155, as amended by the Act of 1881, P. L. 107). I incline to the belief that the referee correctly adopted the above-mentioned rule, but whether he did or not is immaterial on this hearing, for the reason that, as above stated, none of the claimants are seeking a review of any of his orders prior to that of July 6, 1912.

In the McIntyre Case and in all those cited by Jones in his work to sustain the above-quoted text, the court had under consideration securities repledged to but a single bank. In the present case there were six repledgees. The securities pledged to the Third National Bank were by agreement, so the referee states, left with it "until determination of title thereto." They were not sold as were the securities held by other moneyed institutions and by Toland. Disregarding, then, the Third National Bank as a repledgee and the securities held by it to protect its loan to the bankrupts, should the several funds returned by the other four moneyed institutions and by Toland, with the increase due to the sale of securities under the referee's order (in so far as securities returned were sold), be consolidated into one fund for distribution among those whose securities were unlawfully pledged? The referee by his order answered this question in the affirmative, thus enlarging the application of the above-quoted rule. If the order thus made rests on sound legal principles, it is difficult to understand why the Third National Bank should be in a class by itself. In the McIntyre Case, supra, the securities involved had all been repledged to the National Bank of Commerce. The report of another branch of that case, found in 181 Fed. 955, 104 C. C. A. 419, 24 Am. Bankr. Rep. 626, shows that there was still another bank to which securities belonging to customers of McIntyre & Co. had been pledged. They were dealt with separate and apart from those which had been repledged to the National Bank of Commerce. The inference to be drawn from Jones on Collateral Securities, supra, is that the sum realized from the securities rehypothecated with each repledgee is to be shared by the persons—and those persons only—whose securities were so rehypothecated and who may be found to be entitled to share in such sum. They take the whole of the fund realized; their securities having been subjected to a common risk. They are not required to share with some other customer or customers of the bankrupts whose securities were repledged by the bankrupts with some other person or moneyed institution. The text-writer cites Gould v. Central Trust Co., 6 Abb. N. C. (N. Y.) 381, and Gould v. Farmers' Loan & Trust Co., 23 Hun (N. Y.) 322. Both cases arose out of the same failure. The customers whose securities were repledged with the Central Trust Company were limited to what they could get through that company alone. Those whose securities were repledged to the Farmers' Loan & Trust Company were likewise restricted to the recovery of such sums as might be realized from the securities rehypothecated to that company. The same rule should, I think, apply in the present case. The claimants are not general creditors. The proceeding as to each of them is in the nature of a reclamation. Each is seeking the recovery of his own specific property. To illustrate the rule, the ultimate sum realized for distribution from the securities held by the Girard Trust Company, for instance—being the amount of cash returned by it and of the sum realized from the securities returned by it and sold under the referee's order—constitutes a fund to be distributed among the persons and those persons only whose securities were rehypothecated with such trust company and who are found entitled to share therein. The fund for distribution arising from securities held by Toland and by each of the moneyed institutions respectively is to be maintained separate. The several funds cannot be consolidated. With this exception the referee is affirmed, a further review of matters decided by him or discussed in the briefs being deemed unnecessary.

I have made no computation to determine whether a distribution made in accordance with this opinion will let in any of the claimants of the second class, i. e., claimants whose securities were lawfully pledged. The order which will be taken in accordance with the foregoing should be so drawn as to provide for such a contingency, should it arise. All exceptions and rights may be reserved.

R. Stuart Smith and Charles E. Morgan, both of Philadelphia, Pa., for appellant.

Henry A. Hoefler and John C. Gilpin, both of Philadelphia, Pa., for appellee.

Before GRAY, BUFFINGTON, and McPHERSON, Circuit Judges.

J. B. McPHERSON, Circuit Judge. We take the following admirably clear statement of facts from the brief of Mr. Smith:

"Jamison Bros. & Co., a copartnership, were stockbrokers engaged in business in Philadelphia. On May 9, 1911, they filed a voluntary petition in bankruptcy and were adjudged bankrupt. The case was referred to Richard S. Hunter, Esq., referee in bankruptcy, and George McCurdy was appointed receiver and thereafter elected trustee.

"At the time of the adjudication Jamison Bros. & Co. were indebted to the West End Trust Company, Girard Trust Company, Real Estate Title Insurance & Trust Company, Pennsylvania Company for Insurance on Lives and Granting Annuities, Edward D. Toland, and the Third National Bank, on demand loans made by these parties secured by collateral pledged with them respectively by Jamison Bros. & Co. In each case the collateral pledged by the brokers exceeded in value the amount of the loan. It developed that various customers of Jamison Bros. & Co. had pledged with them as collateral security for payment of their respective accounts with the brokers, certificates of stock belonging to the customers, and that in many instances such certificates had been unlawfully rehypothecated by the brokers with one or more of the six institutions or bankers above named.

"Certain of these creditors were able to identify their securities in the hands of the bankers with whom they had been repledged, and these bankers were about to sell the repledged securities for repayment of their loans.

"Thereupon on motion of counsel for the trustee and counsel for various claimants, the referee entered decrees directing the sale of all the securities then remaining unsold, by the bankers, and after deduction of the amounts of their respective loans, the payment by the several bankers to the trustee of the balances in their respective hands, together with a written statement containing all available evidence of identification and ownership of the securities and an account of the sales. These moneys were deposited by the trustee in a special deposit, and all persons making any claims to any of the securities were notified to file their claims with the referee.

"Copies of the two decrees are printed in the appendix to this brief. A separate decree was made in the case of the Toland loan, because Mr. Toland had sold his securities before the decree was entered.

"In conformity with the order of the referee, the bankers sold the securities, collected the amount of their loans, with interest, and paid to the trustee the following sums:

| | |
|---|---|
| West End Trust Company | $21,541 21 |
| Girard Trust Company | 1,329 31 |
| Pennsylvania Company | 10,876 75 |
| Real Estate Title Company | 294 38 |
| Edward D. Toland | 76 70 |
| Total | $34,118 35 |

"In addition to the above amounts, the trustee received certain unsold securities from the Girard Trust Company, Real Estate Title Company, and Edward D. Toland, which were thereafter ordered by the referee to be sold by the trustee, the proceeds of sale to be added to the special fund.

"The securities pledged with the Third National Bank were by agreement left unsold and in the custody of the bank, and are not involved in this appeal.

"Claims were filed with the referee on behalf of thirty-four claimants who asserted title to securities rehypothecated by the bankrupts. The trustee filed answers and testimony was taken before the referee in support of' each claim.

"On July 6, 1912, the referee filed his report, in which he held that the owners of securities unlawfully rehypothecated, who were able to trace and identify their securities, were entitled to a priority over the owners of securities which were lawfully rehypothecated by the brokers; and that, where all the claimants were of the same class, they must share pro rata in the fund, if not sufficient to satisfy all the claims in full.

"The referee divided the claimants into two classes:

"First. Those whose securities were unlawfully converted and who could trace these securities into the hands of the subsequent lender.

"Second. Those whose securities were lawfully converted and who could trace these securities into the hands of the subsequent lender.

"The claim of the appellant, Frank H. MacMorris, was found by the referee to belong in the first class. The referee decided that, after deducting from the proceeds of sale of all his securities the amount which he owed the bankrupts, there was an equity due MacMorris of $14,948.05.

"Various other claimants were found by the referee to belong in the first class, and the total amount of all equities due the claimants of the first class was found to be $64,584.38. The referee awarded the whole of the special fund, after payment of the costs of the reclamation proceedings, to claimants of the first class pro rata; the fund being insufficient to pay claimants of the first class in full.

"A petition for review of the referee's opinion, and order of award was filed on behalf of certain claimants, and the record was certified by the referee to the District Court under General Order 27.

"The case was heard by Judge Sater, of the District Court for the Southern District of Ohio (sitting by designation), who on April 11, 1913, filed an opinion in which he affirmed the referee in every respect except one. Judge Sater held that the sums returned to the trustee by the four financial institutions and by Edward D. Toland should not have been treated as one fund for ratable distribution among all claimants whose securities were unlawfully pledged. He held, on the contrary, that each loan was to be treated as a separate transaction and that the sum realized from the sale of securities rehypothecated with each repledgee was to be shared only by the persons whose securities were rehypothecated in that particular loan. In the opinion of the court, therefore, there were five separate funds instead of one, each fund distributable among claimants of the first class, the sale of whose securities contributed to that fund.

"Accordingly, a decree was entered on May 26, 1913, the effect of which was to award unequal dividends to claimants of the first class, as follows:

"Claimants on West End Trust Company surplus...................62%
"Claimants on Girard Trust Company surplus.....................21%
"Claimants on Pennsylvania Company surplus....................98%
"Claimants on Real Estate Title Company surplus................14%
"Claimants on Toland surplus...........................$7/10$ of 1%"

[1] Judge Sater's reasons in support of the decree will be found in his opinion reported above, and they are so satisfactory that little need be added. We may say a few words, however, to emphasize the proposition that the rights of the claimant were in existence at the date of the bankruptcy; the decree merely recognizing these rights and making them effective. If the claimant had discovered before the bankruptcy that his securities had been wrongfully repledged, he would have found them in the possession of the West End Trust Company and of Edward D. Toland. He would also have found in the hands of each of these repledgees other securities belonging to other persons in the same

plight as his own. But the bankrupts' loan from the trust company was a separate transaction from the loan made by Toland, and we cannot see on what legal or equitable principle the claimant could have consolidated the two transactions, and thus treated them as one. To do so would have had the effect of making new contracts between the bankrupts and the repledgees, for it would have taken the stocks and bonds pledged as collateral for one loan and compelled them to stand as collateral for the other loan also, although in fact they had nothing to do with the second transaction. Moreover, the claimant might also have discovered that the bankrupts had repledged securities belonging to other persons with the Girard Trust Company, the Pennsylvania Company, and the Real Estate Title Insurance & Trust Company, to stand as collateral for separate and additional loans, to which his own securities bore no relation whatever—not even the unimportant relation that existed between the West End and the Toland loans. Upon what ground could he have interfered with these last-named loans, and in effect merged them with the loans made by the West End Trust Company and by Toland? And if he could not have done this before bankruptcy he cannot do so now, for the rights of creditors, as many decisions hold, are fixed in essence as of the time of bankruptcy.

The defect in the claimant's argument is that he treats the surplus arising from the sale of the securities that were wrongfully repledged as if it were a single fund belonging to the bankrupts themselves, and upon this assumption he contends (not without force) that all the owners whose securities were thus dealt with should share pro rata in the surplus. But the assumption is not correct, and the argument based upon it must fail. In reality and in equity the surplus belonged, not to the bankrupts, but to the owners of the securities, and it did not constitute a single fund, but five funds, which belonged respectively to five groups of the bankrupts' customers. In our opinion the right of the individuals composing each group is distinct, and is not held in common with the other four.

What right (legal or equitable) the bankrupts might have had in a surplus arising from the sale of securities that had been rightfully repledged is not involved in this controversy, and we express no opinion thereon.

The decree is affirmed.

### On Rehearing.

This rehearing is in effect a new appeal from the decree of Judge Sater (sitting by designation in the Eastern district of Pennsylvania) that was affirmed in the foregoing opinion. Indeed, the rehearing was granted expressly in order to save the delay and expense that would have resulted if the strictly regular course of taking a new appeal had been followed.

[2] The persons whose interests are now specially urged do not attack the principle of Judge Sater's decree, namely, the separation of the fund for distribution into five funds. On the contrary, they approve the principle; but they argue for a modification of the decree, so that no creditor shall be permitted to share in any of these separate

funds except the creditors that appealed from the referee's decision to the district court. There was no appeal from the decision except on behalf of the persons now before us, and, if the modification they ask for should be made, their shares in the respective funds would be much increased. It is true that a large majority of the creditors that were affected by the referee's ruling acquiesced therein, and that only eight creditors appealed to the District Court; but we do not see how these persons could avoid acting in behalf of other creditors whose situation was similar to their own. Only one question of controlling importance was raised in the District Court, and the decision necessarily affected every claimant to the fund, even if he did not join in the appeal. That question was, not whether a particular, independent, claim should be allowed, but what principle of distribution should be applied; and in our opinion all creditors in a similar situation were affected by the decision. If the referee was right, all creditors of a particular class were entitled to share ratably in the fund, considered as a single whole; if he was wrong, a different rule of distribution was to govern. But the present contention goes further, and asks us to hold that eight creditors are to be formed into a new subclass, and are to be entitled to full payment out of five separate funds (if the respective amounts be sufficient to satisfy their claims), while all other claimants, although in a similar situation, are only entitled to receive much smaller proportionate sums. We think this result would be inequitable; and, moreover, that it finds no support in the cited cases that hold a claimant bound by an adverse judgment from which he does not appeal. Such cases do not apply to the situation now presented, where numerous claims stand upon a precisely similar footing, except for the difference in amount.

We therefore decline to modify the decree of affirmance that has been already entered.