In re JAMISON BROS. & CO.

TOLAND'S EX'RS v. GEORGE et al.

(Circuit Court of Appeals, Third Circuit.  November 5, 1915.)

No. 1980.

1. APPEAL AND ERROR ☞1099—DETERMINATION—FORMER JUDGMENT.
  . A bankrupt pledged securities which were not his own.  The pledgee
  satisfied the debt by selling part of the securities, and delivered the re-
  mainder to the trustee.  Thereafter it was adjudicated by the District
  Court and affirmed by the Circuit Court of Appeals that the securities
  delivered to the trustee did not belong to the bankrupt.  Subsequently it
  became a question whether the pledgee, who had warranted the transfers
  of the securities sold, would be held liable on his warranty; the shares
  appearing not to have belonged to the bankrupt.  *Held* that, notwith-
  standing the decision that the shares delivered to the trustee were not
  the property of the bankrupt, such decision would not preclude the pledgee
  from asserting a lien thereon, and the court might order the trustee to
  hold the shares until the question whether the pledgee would be held
  liable on his warranty, and so in a position to assert a lien, was decided.
    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4370–
  4379;  Dec. Dig. ☞1099.]

2. BANKRUPTCY ☞210—JURISDICTION—COURT OF EQUITY.
    In such case, as the shares were actually in the custody of the
  trustee and had apparently been the property of the bankrupt, the court
  had jurisdiction to determine the pledgee's asserted rights therein;  a
  court of equity having power to determine all questions affecting a fund
  in course of distribution.
    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 321–323;
  Dec. Dig. ☞210.]

3. BANKRUPTCY ☞298—ENFORCEMENT OF LIEN—LACHES.
    A delay of about two years in bringing on the pledgee's petition for
  hearing is not laches barring relief;  it not appearing that the creditors
  were injured, or that the delay was not acquiesced in by all parties.
    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 430–443;
  Dec. Dig. ☞298.]

Appeal from the District Court of the United States for the Eastern
District of Pennsylvania;  Oliver B. Dickinson, Judge.

· In the matter of the bankruptcy of Jamison Bros. & Co.  Petition
by Robert Toland and others, as executors of Edward D. Toland, de-
ceased, against O. B. George and others.  From a decree reversing a
referee's order in favor of the petitioners, petitioners appeal.  De-
cree reversed, with directions to reinstate referee's order.

See, also, 222 Fed. 92.

The following is the opinion of the court below:

The ways of these bankrupts were so devious that the tracing of their course
is a labyrinthian task.  They were involved in so many contemporaneous trans-
actions following down along parallel lines that any chronological statement
of the facts almost compels repetitions.  We may begin, however, with the
statement that the bankrupts were bankers and brokers.  In the course of their
business they received, for loans or advances made, pledges of bonds and cer-
tificates of stocks as collateral, or otherwise held securities belonging to their
customers.  These it is charged they hypothecated, some with and others with-

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

out authority, for moneys borrowed by them. It is further charged that some of the powers by which the transfers were made were forged. Accompanying the transfers by means of these forged powers were implied or express warranties by the assignors, and in some instances by brokers, of the genuineness of the signatures. Even the trustee, and brokers acting for him, have innocently enough been drawn into this complication through sales made by the trustee following transfers now asserted to have been forged. Out of the first stage of these crooked transactions by the bankrupts spring three classes of claimants. Some have claims to share in the assets of the bankrupt estate. Others claim some of the assets as their property. These classes of claimants are those whose securities were used with authority, those whose securities were fraudulently disposed of, and those whose supposed transfers had been forged, in addition to the parties (since paid) who had made collateral loans to the bankrupt. Out of the sales made by pledgees and others through forged transfers arise another class of claimants in those who have suffered or are threatened with loss because of the implied or express warranties into which they were drawn. Other parties, of whom no special mention need now be made, are also involved in this record.

In this outline statement particular reference need only be made to the parties who are concerned with the report of the referee now before us for review. These are A. A. Sellers, C. P. Shoemaker, Frank H. MacMorris, John S. Latta, O. B. George, Smyth. Henry & Kirkbride, and Edward D. Toland. Any attempt to give in detail the facts which show the relations (except in their general bearings) of each to the others and to the bankrupt estate would call for a lengthy statement. These facts have already in part been stated. We therefore confine ourselves to the facts not appearing in the adjudications heretofore made. The first complication grew out of the fact, already mentioned, that the bankrupts had pledged for loans made to them securities belonging to others. The holders of this collateral sold it. In some instances all the collateral, and in others part of what was so held, was sold. The money balance remaining after payment of the loans and the unsold securities were turned over to the trustee. The referee then went into an inquiry to find who were entitled to the unsold securities and to the remaining proceeds of those sold. This he in the first instance determined in proceedings which began July 6, 1911, and ended with his order of July 6, 1912. This order was followed on a petition for a review of his findings by the decree of this court on May 26, 1913, and this in turn by the decree of the Circuit Court of Appeals on appeal and after reargument. The mandate of the latter court was lodged of record here December 20, 1913.

On this statement of facts the only inquiry which would suggest itself is how any question could arise over what had thus been determined. It seems to have been brought into question in this wise. At the time the collaterals were sold the title was supposed to have been in the control of the pledgees, of whom, for illustration, Edward D. Toland was one. The power to dispose of the securities was evidenced (it is to be supposed) by the usual form of transfer executed in blank. No question of the genuineness of these signatures had arisen. Following the usual practice Toland in making sale of those sold warranted such genuineness. On October 30, 1912, he was notified that the signature to the transfer of one of the securities he had sold was a forgery. Anticipating that he might be held liable on his warranty, he on November 15, 1912, applied to the referee for an order for the return to him of the cash and unsold securities which he had turned over to the trustee. The purpose was that he might thus recoup any loss sustained by him because of his warranty.

We must pause here to bring into the narrative and down to this point another branch of the case. Among the securities delivered to the trustee were bonds of the par value of $5,000, known as "Consols 4's" of the Securities Company of New York. These were sold by the trustee through the brokerage firm of Smyth, Henry & Kirkbride, who, as in the case of the Toland sales, warranted the genuineness of the signatures to the transfer. On November 20, 1912, Smyth, Henry & Kirkbride applied for a like order with that of Toland, that the proceeds of these bonds be paid over to them for protection against possible loss because of their warranty. There were other petitions presented, but

they were all of like tenor with the above. Subsequent to, but along with, the filing of these petitions, Latta and other claimants to the property and moneys in the hands of the trustee asked for orders on him to deliver what the court had determined to belong to them. These petitions were met with demurrers and answers which we need not follow. The proceedings finally culminated, after interpleading orders, in a ruling by the referee refusing the prayers of the petitions of Latta and George, and granting the prayer of Toland, and granting also that of Smyth, Henry & Kirkbride, so far as to order that the proceeds of the Securities Company bonds be held by the trustee. Latta, George, Sellers, and Shoemaker filed petitions to have this decision and order reviewed, and they are accordingly now before the court.

Whatever might be said of the general equities of Toland, we are confronted with this dilemma. The District Court has decreed that certain parties are "entitled to" the named securities and sums of money in the hands of the trustee. The appellate court has given its sanction to this decree by its affirmance and adoption, so that it has become the decree of that court. The order of the referee nullifies this decree and substitutes one of his own making for it. Clearly this was beyond the power of the referee or of this court to do. Mandates of the Court of Appeals to this court are to be obeyed. They cannot be annulled or modified, except by that court or the Supreme Court on appeal, and no referee can make any orders inconsistent with what the court has decreed.

This disposes of the discussion and calls for a revocation of the order.

It may be said in passing, however, that the fact upon which the supposed equity of Toland turns came to light nearly seven months before the decree of May 26, 1913, was entered in this court, and that the jeopardy in which he feels himself placed grew out, for all that appears, of his own voluntary act of entering into an agreement of warranty with the purchaser of the bonds and stocks which he sold. The predicament of Smyth, Henry & Kirkbride is one which carries with it a strong appeal for any aid in extricating them, which can be rendered without doing violence to the rights of others. It is evident, however, that no harm can come to them through any proceedings in this cause until distribution of the fund which they ask to be held for their protection. This, indeed, applies also to Toland.

The orders and each of them, brought up by this petition for review, are revoked and annulled, and the report remitted to the referee, with directions to proceed with the cause in accordance with the decree of this court of May 26, 1913, as affirmed by the Circuit Court of Appeals.

C. Berkeley Taylor, of Philadelphia, Pa., for appellants.

Henry M. Du Bois, of Philadelphia, Pa., for appellee Latta.

B. Gordon Bromley and Harold Evans, both of Philadelphia, Pa., for appellee George.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

McPHERSON, Circuit Judge. The question for decision is whether the referee was right in directing the trustee of Jamison Bros. to retain the custody of certain securities that had been pledged by the bankrupt to Edward D. Toland, but had afterwards been returned by Toland to the trustee. This retention was only to be temporary—until the court should determine whether Toland had lost the right to claim a lien thereon. The ground of his claim was that after he had returned the securities to the trustee he had discovered that he was still exposed to liability in connection with the sale of certain other of the pledged securities, and that he would be entitled to reimbursement from the securities returned in case this liability should be adjudged against him. On the other hand, O. B. George and John S.

Latta, the respective owners of the returned securities, set up inter alia a decree of the District Court, affirmed by the Circuit Court of Appeals, adjudging them to be the owners, and asserted these decrees to be conclusive. The referee directed the trustee to retain the securities, but the District Court reversed the order, holding the decree of this court to be final.

The situation is involved, and requires the facts to be stated with some fullness. On May 9, 1911, the date of adjudication in bankruptcy, Jamison Bros. & Co. owed Toland nearly $82,000 and had pledged various securities as collateral for the loan. Soon afterwards Toland sold nearly all of them, realizing enough money to pay his debt and leave a small surplus. Early in June he paid the surplus to the trustee, and delivered to him the remaining securities. Among these were 38 shares of the American News Company and 100 shares of the Easton Electric Company. The bankrupts had wrongfully pledged these securities, of which they were merely the bailees, and in July George claimed to be the rightful owner of the 38 shares, and Latta claimed to be the rightful owner of the 100 shares. A year later, in July, 1912; the referee sustained their claims, but his decision did not satisfy all the creditors, and on November 15 he certified the question to the District Court for review. On that very day Toland presented a petition to the referee which may be described as the beginning of the dispute now before us. In that petition he averred—the facts hereafter stated are not controverted—that on October 30, two weeks before, he had learned for the first time that the transfer on the back of certain bonds among his collateral was believed to be a forgery. He had sold these bonds for about $12,-000, and as he had guaranteed the suspected transfer he would be obliged to repay this sum, if the suspicion should prove to be well founded. Asking for protection against this contingency, he prayed that the trustee might be ordered to redeliver to him the 38 shares and the 100 shares already referred to. On November 29 the trustee demurred to the petition, and the proceeding remained in that situation for nearly two years.

Meanwhile, however, other proceedings that are relevant to the controversy now in hand were going on before other tribunals. In February, 1913, Toland received notice of a suit in the Supreme Court of New York County between two other parties. This suit involved the question of the forgery, and he afterwards became a party by intervention to protect his interest. The Supreme Court decided that he was not liable for the consequences of the forgery (the reasons not being important), and the Appellate Division affirmed the decree. But an appeal was taken to the New York Court of Appeals, and the case has not yet been heard, and we are informed cannot be heard for several months. For this delay the federal tribunals here are in no way responsible, and it cannot be decisive in the present dispute. The situation is this: If the decree already entered in Toland's favor be affirmed by the highest court of the state, he is altogether relieved from liability and can have no further claim upon the shares in question. But if the New York court should decide against him, and he should be

obliged to make good his guaranty to the extent of $12,000, he will then be compelled to fall back on the similar guaranty of the bankrupts made to him when the bonds were pledged. Whether he can reimburse himself, in whole or in part, out of the 38 shares and the 100 shares, will then be a question of importance to be determined in this jurisdiction.

While these events were happening in the courts of New York, let us see what was going on in Pennsylvania. As already stated, the referee's decision that George and Latta were the true owners of the stocks was certified to the District Court with similar questions, and was affirmed by that tribunal on May 26, 1913. An appeal was taken to this court, but the decree below was affirmed in November, 1913, and after a reargument was again affirmed in December of the same year. Re Jamison Bros., 209 Fed. 541, 126 C. C. A. 363. For some reason, nothing more appears to have been done in the bankruptcy court until eight or nine months afterwards, when the parties interested in the securities now in question turned to Toland's petition of November 15, 1912, which was still pending before the referee. All parties knew of this petition, and of Toland's claims as pledgee, and the stocks were still in the hands of the trustee. On October 1, 1914, the trustee's demurrer was overruled, and a few days later the trustee answered Toland's petition, and set up the titles of George and Latta. These claimants came in also with petitions of their own, asking that the trustee might be compelled to deliver the stocks to them, and to these petitions the trustee replied by setting up the claim of Toland. On October 30 the referee, recognizing that the chief dispute was between the owners and the claimant, ordered Toland to become a party defendant to the petitions of George and Latta. This was done; Toland again setting forth the facts in reference to the forgery and the suit in New York, and asking that the trustee retain the securities until the controversy there should be finally decided. On December 1 the referee refused the petitions of George and Latta, and granted the relief asked by Toland, directing the stocks to be retained by the trustee. This decision was certified to the District Court on December 24, and on May 24, 1915, the referee's order was reversed, Toland's petition was dismissed, and the trustee was ordered to deliver the securities to George and Latta respectively. From this decree the present appeal was taken by Toland's executors.

[1] By reference to the opinion of the District Court set out above, it will be observed that the decision is put upon the single ground that the decree of this court, entered in November, 1913, affirming the previous decree of the District Court entered on May 26, had decided that George and Latta were "entitled to the named securities * * * in the hands of the trustee," and that neither the referee nor the District Court had authority to amend or modify what this court had done. We therefore have the dispute below referred to us by what seems to have been in effect a pro forma decree, to which the learned judge regarded himself as constrained. We appreciate the attitude of the court below, and have no doubt that, if the District Judge had felt himself at liberty to consider the question, he would have come to

the conclusion that the decree of this court was not an obstacle in the way of doing what the equities of this unusual situation appear to demand. We see no occasion to modify that decree. In November, 1913, we decided what was then before us, namely, the question who were the owners of these (among other) securities; but we did not decide, and were not asked to decide, whether the title, the right of ownership, was or was not subject to a lien, actual or contingent, in favor of Toland. Obviously a man may be the "owner" of property, although the property may be incumbered to its full value. George and Latta have been decreed to be the owners of these shares, and that question is settled, so far as the parties to that decree are concerned. But whether the title was burdened with a contingent equity was not involved, either actually or by necessary implication. Toland was not a party, and in any event was not and is not now contesting the title of either owner. He merely asserts a contingent right, whether the securities belonged to the bankrupts or to George and Latta. No rights of purchasers for value have intervened.

The validity of this right should not now be determined. The point may never arise, and we decide nothing now, except that the trustee should retain the shares for the present, so that Toland may have an opportunity to be heard if the need therefor should arise.

[2] It is only necessary to add a few words in reply to one or two positions of the appellees. First, we have no doubt of the jurisdiction below and here. The shares are actually in the custody of the trustee, who holds them in that character. They were apparently the property of the bankrupts, and the District Court was bound to determine who was in fact the owner. Generally speaking, a court of equity has power to determine all questions affecting a fund in course of distribution. We think the court is equally bound to determine whether these shares are subject to Toland's lien, if he should lose the appeal in New York; for in that event the distribution of the bankrupt's estate will be affected. If Toland loses, and if his lien is good, George and Latta will evidently have a claim against the estate that they do not now have; and, if the lien is good, and the shares do not produce $12,000, Toland will have a claim for the balance.

[3] Neither has Toland been guilty of laches that estops him from asserting his claim. There is no evidence that the delay—in which all parties seem to have shared—has done harm to George and Latta, and there is nothing, therefore, to interfere with Toland's proceeding. Even if he could have intervened in the dispute over the title, his claim would have been restricted to just what it is now, namely, a claim that the trustee should retain the shares. In fact, he did intervene before the appropriate tribunal, the referee, and, as we have already said, all parties were aware of his claim. But we may say that, if for any reason it should seem desirable to sell these shares and substitute the proceeds, we have no doubt an order of sale will be made upon proper application.

The decree is reversed, with directions to reinstate the order of the referee.