BANK OF THE UNIVERSITY *v.* ATHENS SAVINGS BANK.

1. Where one returns for taxes real estate the use and possession of which he is enjoying and to which he holds bond for title given him by the grantee in a security-deed, he is liable for such taxes; and when the property is sold for their payment, under a tax execution issued against him, the holder of the security-deed may become the purchaser of the property and thus acquire a perfect and complete title thereto, subject only to the right of redemption allowed by law.

2. Prior to the act of 1898, one not interested in land sold by the sheriff for State and county taxes except by reason of his holding a judgment lien upon it had no right to attack the sale because of excessiveness in the levy.

3. The verdict being amply sustained by the evidence and the above being the controlling principles in the case, it is unnecessary to deal with the other questions presented by the record.

Argued March 22. — Decided April 20, 1899.

Levy and claim.    Before Judge Hutchins.    Clarke superior court.    April term, 1898.

*John J. Strickland,* for plaintiff in error.    *T. S. Mell,* contra.

SIMMONS, C. J.    In 1892 Mrs. Brumby borrowed money from the Athens Savings Bank and secured its payment by a deed to land, receiving from the bank bond for title conditioned to reconvey upon repayment of the loan.    Mrs. Brumby remained in possession of the premises and enjoyed the fruits of possession.    This deed to the bank was not recorded in the time required by law.    In December, 1893, the Bank of the University obtained a judgment against Mrs. Brumby.    In 1894 Mrs. Brumby obtained an additional loan from the Athens Savings Bank, made it another deed to the same property, and received from it another bond for title.    In 1895 tax executions for the years 1893 and 1894, for which years Mrs. Brumby had returned the land for taxes, were issued against her and levied by the sheriff upon this property, she having pointed it out to him for levy.    A sale was had under this levy, and the property was bought in by the Athens Savings Bank, to which a deed was executed by the sheriff and duly recorded.    In the same year, but subsequently to the sale under the tax executions, the Bank of the University had its execution, founded upon the judgment obtained in December, 1893, levied upon the property.    The Athens Savings Bank filed a claim to the property.    Upon the trial of the claim several issues were tendered by the plaintiff in fi. fa., to wit, that the claimant, being the owner of the land under the deeds from Mrs. Brumby, was liable for the taxes, and its purchase at the tax sale did not entitle it to a deed, but should be regarded only as payment of the taxes which it was in law liable and bound to pay; and that the levy was excessive and the sale void.    The jury returned a verdict for the claimant.    A motion for a new trial was made, and was by the court overruled.    Plaintiff in fi. fa. excepted.

1. Where one holds land under bond for title and enjoys the use of the land, the law in this State is that the holder of the bond for title, as between him and the owner of the fee, is bound for the taxes.    This is because the holder of the bond

for title is in possession, enjoying the fruits of that possession, and because the holder of the legal title, where he has contracted to sell the land or to convey it upon repayment of a loan, is required to pay taxes upon such of the purchase-money as he has received and upon the notes given him by the other. *National Bank of Athens* v. *Danforth*, 80 *Ga.* 55. So far as the public is concerned, the property might have been treated as that of either Mrs. Brumby or the claimant, but inasmuch as Mrs. Brumby had returned the property for taxes, and as the fi. fa. had issued against her and she had pointed out the land to the sheriff for levy, he had the right, and indeed was bound, to levy upon it as her property. The claimant, holding the legal title might have prevented the sale by paying the sheriff the amount of the tax executions, but it was not bound to do so, as it held only what may be called a defeasible title, having obligated itself to reconvey to Mrs. Brumby upon repayment of the loan. Holding such a title as this, and the judgment of the plaintiff being superior to such title on account of the non-record of the deed, could the claimant strengthen its title and remove the lien of plaintiff's judgment by purchasing the land at the tax sale? We think it could do so. As before stated, Mrs. Brumby and the land were bound for the taxes. As to her and every one else, the sale was legal. The purchaser at the sale would obtain a full and legal title to the land sold, subject only to the right of redemption allowed by law. If the Bank of the University had bought in the property, the title acquired would have been free from all liens and incumbrances. So if a stranger had purchased. Why, then, was not the title acquired by the claimant a good one? Under the circumstances of the case, the claimant was not liable to pay the taxes, for the property had been returned for taxes by Mrs. Brumby, and, as between it and her, the law declared that she was liable. Had the claimant had no deed from Mrs. Brumby, no one could doubt that it could have acquired a good title by purchasing the land at the tax sale. Having the deed, we see no reason in law or equity why it could not purchase the property at a legal tax sale and obtain a title free from the lien of the judgment of the plaintiff in error. If the plaintiff had desired, it

could have paid off these executions and had them transferred
to it so as to preserve the lien of its common-law judgment; or
it could have purchased the property at the sale and gotten a
title thereto which would have been better than the title of the
claimant as it then stood. Instead of doing either of these
things, it stood by and saw the property sold to the claimant,
and by so doing, in our opinion, lost the lien of its judgment
against the property.

2. We think that, prior to the act of 1898, a lienholder had
no right, after a tax sale and a deed to the purchaser, to make
the question that the levy of the tax fi. fa. was excessive. He
was in no way connected with the title and was not in privity
therein with the owner of the land. In the case of *McArthur*
v. *Peacock*, 93 *Ga.* 715, this court analogized the right to com-
plain of the excessiveness of a levy to the right to redeem the
land after the tax sale, and said that the two were alike in prin-
ciple. In that case it was held that a stranger to the title who
was not in possession had no right to make the question of the
excessiveness of the levy and sale. It is true there is an inti-
mation by Lumpkin, J., that a creditor would have a right
to redeem the land, and would, therefore, under his reasoning,
have a right to make the question as to whether the levy was
excessive; but this court afterward, in the case of *Mixon* v.
*Stanley*, 100 *Ga.* 372, decided that only the owner of the land
had the right, under our code, to redeem, and that a mortgagee
had not the right. Fish, J., in an elaborate discussion of the
question, held that, under our code as it then stood, a lienholder
had no right of redemption. In 1898 the General Assembly
changed the code so as to allow lienholders or any person in-
terested in the land or any creditor to redeem, but this act was
passed subsequently to the trial of the case now under consider-
ation. As the law stood prior to the act of 1898, a lienholder
had no right of redemption, and, consequently, no right to com-
plain of the excessiveness of the levy and sale of land on which
he held a lien. This seems, up to 1898, to have been the policy
of the General Assembly. That body must have thought that
the lienholder could not be injured by refusing him the right
to redeem, because tax sales were advertised as other sheriff's

sales, the sale was public before the court-house door, the world was presumed to have notice of the levy and of the time of sale, and the lienholder could have protected himself by paying the taxes or by purchasing the property at the sale. The sale now under consideration was doubtless advertised and held as prescribed by law; at least nothing appears to the contrary. The plaintiff knew, or ought to have known, of the sale, and could have protected itself by payment of the taxes or by purchasing the property at the sale. It neglected to do either, and then, after the sale had been completed according to law, levied its fi. fa. upon the property and sought to set aside the sale on account of the excessiveness of the levy. Could it have filed an affidavit of illegality to the levy or taken any proceedings, in law or equity, to arrest the levy on the ground that it was excessive? We think not. If it could not, what right had it to set aside the sale on the same ground? Under the decision in the case of *Mixon* v. *Stanley*, supra, it had no right to redeem the land from the purchaser. Having no right to redeem, it would, according to the principle of *McArthur* v. *Peacock*, have no right to make the question of excessive levy.

3. The above being the controlling questions in the case, we deem it unnecessary to consider other questions made in the motion for new trial.

*Judgment affirmed. All the Justices concurring, except Cobb, J., who was disqualified.*