### SLADE v. MASSACHUSETTS COAL & POWER CO.

#### (Circuit Court, D. Massachusetts. May 4, 1911.)

#### No. 800.

1. RECEIVERS (§ 174*)—ACTION AGAINST—LEAVE OF COURT—FORECLOSURE.

    Where a receiver had been appointed for a corporation mortgagor, the mortgagee could not take any step towards foreclosing the mortgage after default while the receivership continued, without obtaining permission of the court in which the receivership proceedings are pending.

    [Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 333–343; Dec. Dig. § 174.*]

2. CORPORATIONS (§ 481*)—MORTGAGE FORECLOSURE—INJUNCTION.

    Where mortgagees with notice of receivership proceedings against the corporation mortgagor instituted foreclosure proceedings without permission of the court in which the proceedings were instituted, such proceedings will be enjoined.

    [Ed. Note.—For other cases, see Corporations, Dec. Dig. § 481.*]

3. CORPORATIONS (§ 481*)—INSOLVENCY—RECEIVERS—MORTGAGE FORECLOSURE.

    Where a corporation purchased property having an assessed value of $1,720 for $4,200, paying its grantor $3,200 in cash, and giving a purchase money mortgage for the remaining $1,000, and at the time of insolvency only the principal and six months interest remained due, it being probable that the corporation had a valuable equity in the property, and the receiver having applied for leave to sell all the property, the mortgagee would not be permitted to sell on foreclosure pending a receiver's sale; there being nothing to justify apprehension of loss to the mortgagee by such delay.

    [Ed. Note.—For other cases, see Corporations, Dec. Dig. § 481.*]

In Equity. Suit by Edward Slade against the Massachusetts Coal & Power Company. Application by a receiver for an injunction restraining Harmon Carlson and another from selling certain land belonging to defendant company under mortgage foreclosure. Granted.

---

For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

C. A. Barnes for mortgagee.

Warren, Garfield, Whiteside & Lamson, for receivers.

DODGE, District Judge. The bill in this case, filed October 24, 1910, is brought by a creditor of the defendant company on behalf of himself and all other creditors and stockholders. It represents that the defendant owns lands of considerable extent in the town of Mansfield, supposed to contain coal and to be valuable for the purpose of mining the coal. It further represents that some of the real estate is subject to mortgages, a list of which is given, with the names of the mortgagees or holders and the amounts secured, amounting in all to almost $17,000. It goes on to state that the company owes upward of $18,000 in addition to the amounts secured by mortgage. It then alleges that the company has no money or assets readily convertible into money with which to meet its obligations and operating expenses, but that the true value of its assets is believed to be in excess of all its debts; that legal proceedings and foreclosures are threatened, which will result in a loss to the unsecured creditors of any equity which may exist in the mortgaged premises, and in waste, depreciation, and loss of so much of the company's assets as is not subject to mortgage. The bill prays in the usual way for the appointment of a receiver vested with the usual powers, the administration by the court of the company's assets, the enforcement of the liens and rights of all creditors as finally ascertained, and for a sale of the assets and distribution of the proceeds whenever this can be accomplished without undue sacrifice. The defendant company having answered the bill and raising no objection, a receiver was appointed October 25, 1910. From a preliminary report filed by him November 3d it appears that the company owns about 1,700 acres of land in all, about one-third thereof being subject to the mortgages referred to above, which have cost the company about $70,000 in all. Among the mortgages on the company's property specified in the bill appears a mortgage for $1,000 upon 35 acres of land to Harmon Carlson of Mansfield. The company acquired this 35 acres, as is not disputed, from said Carlson for the agreed price of $4,200, paying him $3,200 at the time of purchase, and giving this mortgage for the remaining $1,000. The mortgage is dated August 27, 1909, bears interest at 5 per cent., payable semiannually, and became due February 27, 1911, upon which date the amount of the mortgage, with six months' interest thereon, was due, all previous interest having been paid. The mortgagee has failed to pay the taxes levied upon the property for the year 1910, which amount to $29. On December 31, 1910, the court ordered all creditors of the company to make proof of their claims before the receiver on or before January 28, 1911, or to be forever barred from asserting the same. Due notice was given of the order, and in compliance with it Harmon Carlson presented to the receiver a proof of claim, sworn to before him January 10, 1911, setting forth that the company owed him $1,000, the consideration being the outstanding mortgage given him August 27, 1909. The receiver had previously (November 3, 1910) written Carlson referring to his recent appointment, assuring him that nothing was in-

tended which would affect the lien of the mortgage, asking for particulars of the dates when interest would be due and of the payments on account to date, and stating that for the present it would be impossible to meet promptly the interest as it accrued. Carlson communicated the particulars requested in a letter dated November 7, 1910, acknowledged by the receiver November 15, 1910. Six months' interest on the Carlson mortgage became due February 28, 1911. All previous interest had been paid. It is not disputed that shortly after February 28, 1911, Carlson published an advertisement of a foreclosure sale to take place under the mortgage April 3, 1911. There has been, however, as yet no entry to foreclose. On March 29, 1911, the receiver filed the present petition, in which he set forth that the Carlsons as mortgagees were intending to foreclose and sell; that they had advertised the sale as above; that the mortgaged property was assessed for $1,720; that though the defendant had not paid taxes on the property for 1910, amounting to $20, there would be no tax sale for several months; that unsecured claims had been proved to the amount of $19,617.31; and that the Carlsons as secured creditors had proved a claim for $1,000, and that they had no authority from the court to foreclose or advertise sale. The receiver prayed that they be restrained from selling or taking possession. After summons to show cause why the prayer of this petition should not be granted, the Carlsons filed an answer, which sets forth that the receiver had been notified that principal and interest would be insisted upon when they became due February 28, 1911; that the decree entered October 25, 1910, though it appointed a receiver and forbade every one to interfere with the performance of his duties, was made upon a representation that the property was to be operated and developed, whereas there had been no development and development work had been entirely stopped, so that the occasion for the order had passed. The answer further sets up that as farm property, in the present state of the market, the mortgaged premises are not worth more than the face of the mortgage, with taxes and costs of foreclosure.

[1] The mortgagees admit that they have published notice of sale as alleged by the receiver. They cannot be allowed to take any step toward a foreclosure of their mortgage while the receivership continues, without first obtaining the permission of the court. This is too well settled to admit of any doubt. Wiswall v. Sampson, 14 How. 52, 66, 14 L. Ed. 322; In re Tyler, 149 U. S. 164, 181, 13 Sup. Ct. 785, 37 L. Ed. 689; Hitz v. Jenks, 185 U. S. 155, 166–169, 22 Sup. Ct. 598, 46 L. Ed. 851. Therefore, the restraining order now in force was properly issued, and the mortgagees must be enjoined, as prayed for by the receiver, from selling the mortgaged property or interfering in any way with his possession of it until they have obtained the court's permission. If the publication of their notice was in any sense in violation of the decree appointing the receiver, it is unnecessary to take further notice of the fact; no attempt having been made to proceed with their proposed sale.

[2] In the mortgagees' answer to the receiver's petition alleged facts are set up which might be relied on for the purpose of inducing

the court to allow them to realize on their security after having properly appeared for that purpose in the receivership suit. The answer concludes with a prayer for permission to "continue foreclosure proceedings as speedily as possible." If foreclosure proceedings have been begun, they have been begun without right. These mortgagees would be in any case chargeable with notice of the decree establishing the receivership, and, having appeared as secured creditors in the suit, they cannot deny actual notice. No continuance of proceedings already commenced can be allowed.

[3] Disregarding all informalities, however, is the case one in which the court is bound to permit these mortgagees to realize on their security without further delay, under the circumstances presented? While the custody of the property is at present in the court, and not to be disturbed except by order of the court, it is retained for the benefit of all parties interested in the property according to their respective interests. These mortgagees have a vested contract lien, which the court will not disturb. No such exceptional circumstances appear as might justify the court in refusing it priority over all other claims which might reduce the amount of the mortgagees' security. If the property is insufficient or not more than sufficient to cover the claims secured, no delay in allowing the mortgagees to deal with it according to the terms of their mortgage can be justified. They are in that case the only parties whose interest in this parcel of the company's land has any claim to consideration, and this is none the less true because of the fact, which appears from affidavits and a plan submitted by the receiver, that the mortgaged parcel of land, by reason of its situation near one of the defendant company's shafts and surrounded by its other land, is peculiarly important to any future continuance of its mining enterprise as a whole. The unsecured creditors and stockholders cannot ask upon these grounds that the mortgagees' interest be sacrificed for their benefit. Gay v. Hudson River, etc., Co. (C. C. A.) 184 Fed. 689. But there is strong reason to believe that a substantial and valuable equity exists in the parcel referred to over and above the $1,000, with interest from February 27, 1911, which the mortgage secures. Although the mortgagees' answer states that "as farm property, in the present state of the market for farms in Mansfield, said property is not worth more than the face of said mortgage, taxes, and costs of foreclosure," they produce no disinterested evidence to that effect, while on the other hand the affidavit of Hall, a person experienced in Mansfield land values, estimates the value at $2,500 at least, the tax collector's affidavit shows its assessed value to be $1,720, and, as has been stated, the mortgagees received $3,200 for it from the defendant company in addition to the $1,000 secured upon it. To the extent of the excess of value above the mortgagees' claim, there is an interest available to other parties in the proceedings which it is part of the court's duty to protect, so far as this may be done without unjustly disregarding the mortgagees' rights. The extent to which the court can go in this direction is obviously limited, but I am satisfied that it is not bound at all events to let the mortgagees sell at once, regardless of the effect upon the value of the equity in the property.

These proceedings have for their object the liquidation of the company's affairs and the distribution of the proceeds of its property among its creditors. That they cannot all be paid in full appears to be the probable result. The receiver, after an attempt to arrange for the further development of the mining operations undertaken by the company, has now asked for leave to sell all its property, and notice of the hearing upon this application has been given for May 8, 1911. The further proceedings to be taken in the case will therefore be analogous in their nature to bankruptcy proceedings. This court, or the bankruptcy court exercising its powers as a court of equity, might, for the purposes of such proceedings, sell this parcel or any of the company's land freed from incumbrances, transferring the mortgagees' lien to the proceeds, as declared by the Court of Appeals for this circuit in Re New England Piano Co., 122 Fed. 937, 59 C. C. A. 461. In doing this, though it would afford the mortgagees' prior rights every possible protection, it would not be bound to sell at the time insisted on by the mortgagees. It may, therefore—and the bankruptcy court not infrequently does—restrain a mortgagee for a reasonable time from commencing foreclosure proceedings. Re Pittelkow (D. C.) 92 Fed. 901, 904. When this is done, it is done for the purpose of preventing a sacrifice of the value of the equity, but avoiding at the same time any real detriment to the mortgagee. If this parcel of land is sold at once, it will have to be sold apart from the other lands and property of the company, in connection with which there is reason to believe that it possesses a value lost when it is disconnected from them. The receiver, in the present situation, cannot be expected to protect the value of the company's interest at such a sale. At the receiver's sale of this parcel, subject to the mortgage, made in connection with his sale, under the court's order, of all the other lands and property belonging to the company, it seems to me reasonable to expect that a materially higher value may be obtained for the company's interest. The additional interest which will accrue upon the mortgage before the sale can take place will be inconsiderable in amount. There is nothing before me to justify the apprehension of loss to the mortgagees by merely delaying their foreclosure until after the receiver's sale. The time for that sale will be fixed within a few days, and in fixing it the interests of all parties will have to be considered and will prevent any long postponement. Under all the circumstances, I think I am justified in declining to allow any application for an immediate foreclosure.

The restraining order now in force, enjoining the mortgagees, as prayed for by the receiver, is to continue in force until the further order of the court.