FELTON *v.* McARTHUR, sheriff, *et al.*

466

No. 8047.   September 18, 1931.

**470**

*Jule Fellon* and *Park & Strozier,* for plaintiff.

*W. W. Dykes* and *G. C. Webb,* for defendants.

HINES, J. (After stating the foregoing facts.)

■ ■ The principles announced in headnotes 1 and 2 do not require any elaboration.

■ Section 19 of the act of August 25, 1927, is attacked as unconstitutional upon the ground that it violates article 4, section 1, paragraph 1, of the constitution of this State. This paragraph is as follows: "The right of taxation is a sovereign right, inalienable, indestructible, is the life of the State, and rightfully belongs to the people in all republican governments; and neither the General Assembly, nor any nor all other departments of the government established by this constitution, shall ever have the authority to irrevocably give, grant, limit, or restrain this right; and all laws, grants, contracts, and all other acts whatsoever, by said government or any department thereof, to effect any of these purposes, shall be and are hereby declared to be null and void for every purpose whatsoever; and said right of taxation shall always be under the complete control of, and revocable by, the State, notwithstanding any gift, grant, or contract whatsoever by the General Assembly." Civil Code (1910), § 6462. Does this provision of the constitution prohibit the General Assembly from passing the statute fixing the priority of debts due by an insolvent bank which has been taken over by the superintendent of banks for liquidation, and which gives to the depositors of the bank priority of payment over taxes due by the bank to the State? This provision of the constitution denies to the General Assembly, and to all departments

of the government established by the constitution, "authority to irrevocably give, grant, limit, or restrain this right," that is, the right of taxation, which this provision declares "is a sovereign right, inalienable, indestructible, is the life of the State, and rightfully belongs to the people in all republican governments." In the first place, this paragraph of the constitution simply prohibits irrevocable gifts, grants, limitations, or restraints on this right. It does not expressly prohibit revocable gifts, grants, limitations, or restraints upon this right. This provision then declares that all laws, grants, contracts, and all other acts whatsoever, by the State government or any department thereof, to effect any of these purposes, shall be null and void for every purpose whatsoever. What are the things here referred to? Clearly they are irrevocable gifts, grants, limitations, or restraints affecting the sovereign right of taxation. The gifts, grants, limitations, and restraints prohibited by this provision are those which the legislature undertakes to make irrevocable. By necessary implication the provision does not prohibit revocable ones. It only strikes down irrevocable gifts, grants, limitations, and restraints upon the taxing power. This provision further declares null and void all laws, grants, contracts, and all other acts of the government or any department thereof made to effect any of these purposes; and to carry out this intent it goes further and declares them void for any other purpose whatsoever. This paragraph of the constitution not only makes all laws, grants, contracts, and all other acts of the State or any department thereof making irrevocable gifts, grants, contracts, limitations, and restraints affecting the taxing power, null and void for the purposes intended, but goes further and creates a penalty by making them void for any other purpose whatsoever.

While the interdictions of this paragraph of the constitution are very broad, it does not seem that it was the intention of the makers of the constitution to deny to the legislature the power to fix the priority of payment of taxes, and to make such payments inferior to the payment of other debts of an insolvent bank. In construing this provision of the constitution in the light of the history of its adoption, this conclusion seems to be correct. Prior to the adoption of the constitution of 1877 the legislature had indulged in the practice of exempting certain corporations and taxpayers from the payment of taxes, or limiting the power of taxation of

such corporations or persons. This was especially true in granting the early charters of railway corporations. It was the purpose of the makers of the constitution to deny to the legislature the power to grant exemptions from taxation by laws, contracts, or any other acts; and especially to deny to the legislature the power to exempt railway companies from taxation or to limit the power of the State to tax them. Its purpose was to prohibit exemptions from taxation, and to make void all limitations of every kind and character upon the taxing power of the State. It was not its purpose to prohibit the legislature from prescribing the priority by which the debts of an insolvent bank should be paid, the law fixing such priority not being passed after the creation of the debts sought to be made subject thereto.

■ Under the facts heretofore set out, could the tax fi. fas. against the bank for its 1928 and 1929 taxes be enforced by levy on and sale of its former bank building and lot by the sheriff? The answer to this question depends on the proper answers to two other questions, one of which is, did the State and county have such liens for said taxes as could be enforced by levy and sale under said fi. fas.; and the other is, if the State and county had no such enforceable liens, could Felton defend against the sales under said fi. fas. by reason of this fact? Generally, "taxes shall be paid before any other debt, lien, or claim whatsoever, and the property returned or held at the time of giving in, or after, is always subject." Civil Code (1910), § 1140; *Verdery* v. *Dotterer,* 69 *Ga.* 194. Also it is generally true that "A sale of property under any other process does not divest the lien of the State for taxes." Civil Code (1910), § 1141; *Wilson* v. *Boyd,* 84 *Ga.* 34 (10 S. E. 499); *Planters Warehouse Co.* v. *Simpson,* 164 *Ga.* 190 (138 S. E. 55); *Phœnix Mutual Life Ins. Co.* v. *Appling County,* 164 *Ga.* 861 (139 S. E. 674); *Stephens* v. *First National Bank,* 166 *Ga.* 380 (143 S. E. 386); *Durden* v. *Phillips,* 166 *Ga.* 689 (2. *d*) (144 S. E. 313); *Miller* v. *Jennings,* 168 *Ga.* 101 (147 S. E. 32). This principle first appeared in volume 1 of the Code of 1895, § 884. So it has been held by this court that a sale by the assignee in bankruptcy of property of a bankrupt would not divest the State's lien for taxes. *Stokes* v. *Georgia,* 46 *Ga.* 412 (12 Am. R. 588). So it was held that a sale of land under a decree of the circuit court of the United States would not divest the State's lien for taxes.

*Atlanta &c. R. Co.* v. *Georgia,* 63 *Ga.* 483. It is under these authorities that counsel for the defendants insist that the State and county have such liens as can be enforced by levy and sale; and that the contrary contention of counsel for the plaintiff is without merit. All of these decisions rest upon the law as it stood prior to the passage of the act of August 25, 1927. By that act a very sweeping change was made in the law upon this subject. This statute, in effect, repealed, so far as depositors of insolvent banks are concerned, the former law which gave to the State and counties first liens upon the property of insolvent banks and made such property still liable for taxes although it had been sold under judicial process, and even where it had been sold under a decree of the court granted at the instance of the superintendent of banks. *Stephens* v. *First National Bank,* supra.

In *Bennett* v. *Green,* 156 *Ga.* 572 (119 S. E. 620), this court held that when the superintendent of banks takes possession of an insolvent bank and its assets for the purpose of liquidating its affairs, he does so as a statutory receiver, and that a court of equity will enjoin any unauthorized interference with his possession of its assets. In consequence of this principle and of the act of August 25, 1927, this court held, in *Baggett* v. *Mobley,* supra, that a court of equity will enjoin the tax-collector and sheriff from trying to enforce by levy and sale the collection of tax fi. fas. against an insolvent bank which has been taken over by the superintendent of banks for liquidation, those officers undertaking to enforce the collection of the tax fi. fas. upon the theory that the State had a first lien for its taxes on all the assets of the bank, which could be enforced either before or after the administration of such assets by the superintendent of banks. It follows that a court of equity, since the passage of this act, will enjoin a levy and sale under tax fi. fas. of property of an insolvent bank which has been administered by the superintendent of banks, and which has gone into the hands of persons who claim the right and title thereto under the superintendent. Otherwise the superintendent would be hampered in the administration of the affairs of the insolvent bank. He would be unable to sell or dispose of its assets, if, as soon as he did so, the State could levy upon and sell them under tax fi. fas.

But it is insisted by counsel for the defendants that the superintendent of banks did not sell or otherwise dispose of the interest of

the bank in the bank building and lot, and that for this reason Felton acquired no right or title thereto under the superintendent of banks which a court of equity will protect against sales by levy of these tax fi. fas. The bank only had in this building and lot an equity of redemption. It acquired title thereto subject to an outstanding deed thereto made to secure a loan of $50,000. Felton is the holder of the notes evidencing this debt and of this security deed. The security deed contained a power of sale. On taking possession of the bank and its assets for liquidation the superintendent took possession of this bank building and lot. He held the same for a number of months. To administer this property he had to apply to the judge of the superior court for an order or judgment authorizing him to sell it, and then he could only sell the equity of the bank in the building and lot. The holder of the security deed, which was not given by the bank but by persons under whom the bank claimed title to the building and lot, wanted payment of the secured debt, which was in arrears. Under these circumstances, by arrangement and agreement between the holder of the debt and the security deed and the superintendent of banks, the holder of the security deed advertised and sold this property under the power of sale in the security deed, when it was bid in by such holder for a sum considerably less than the secured debt. Thereupon the superintendent of banks surrendered to the purchaser this bank building and lot. If the superintendent of banks had applied to the superior court for a judgment authorizing the sale of this bank building and lot, he would have had either to sell the same subject to the security deed, thus disposing of the equity of the bank in this property, or he would have had to procure an order for the sale of the property free from the lien of the security deed, in which event the proceeds of the sale would have to be applied first to the secured debt. In order to save the expense of such proceeding, the above arrangement was made under which the holder of the security deed should sell the property under the power of sale contained therein. In these circumstances we think it was competent for the superintendent of banks to enter into the above arrangement, the good faith of which is in no way questioned; and when this property was so sold, this in effect amounted to an administration by the superintendent of banks of the equity of the bank therein. By such agreement or acquiescence by the superintendent of banks in

the sale of the equity of the bank in this property the purchaser acquired all claim or title which the bank had to this equity. *Trust Co.* v. *Mobley,* 40 *Ga. App.* 468 (2) (150 S. E. 169).

But if we are mistaken in this view, and if this transaction did not amount to a disposition of the equity of the bank in this property, then this equity of the bank therein is an asset of the insolvent bank to be administered by the superintendent of banks, not for the purpose of paying the taxes due the State thereon, but, as we shall see, for the purpose of paying the depositors of this bank. In such circumstances a court of equity would, at the instance of the superintendent of banks, enjoin the sale thereof to pay these tax fi. fas., as the lien of the State for these taxes had been displaced by this act in favor of depositors; and as Felton was in possession under his security deed and under a sale of the property under the power of sale therein contained, he had such interest as would entitle him to enjoin the illegal sale under levies of these tax fi. fas. He had such interest in the property as would entitle him to enjoin this sale for any purpose not authorized by law. Furthermore the State had no such interest as would require the superintendent of banks to administer this property for the purpose of paying these taxes. The bank owed its depositors $302,480.71, of which the superintendent had only been able to pay 5 per cent. This amounted to $15,124.04. Under the facts in the record the superintendent could not possibly realize more than $25,000 in addition to pay depositors on their claims. This would still leave due depositors $262,356.67. Before the State would be entitled to any payment on its claim for taxes, the equity of the bank in this building and lot would have to bring more than $262,356.67. Under the facts there is no pretense or claim that this could be accomplished. Under the undisputed facts the proceeds arising from the sale of this property under these tax fi. fas. would have to be applied to the liquidation of the claims of depositors, and not to the claim of the State for these taxes. So we reach the conclusion that one of two things is true: If the sale of this property by agreement or acquiescence between the holder of the security deed and the superintendent of banks, under the power of sale contained in that instrument, amounts to an administration of the equity of the bank in this property, then this property was not subject to levy and sale under these tax fi. fas.; and a sale thereunder should be

enjoined. This could be done at the instance of the purchaser under the sale made in pursuance of the power contained in the security deed. On the other hand, if this sale made by agreement or acquiescence between the holder of the security deed and the superintendent of banks, under the power of sale contained in that instrument, did not amount to due administration of the equity of the bank in this property, then the superintendent of banks would have to administer the same for the purpose of paying depositors; and in that event a court of equity would enjoin the sale of this property under the levy of these tax fi. fas., at the instance of the superintendent of banks, if he had applied for an injunction. Furthermore, the holder of the security deed, being in possession of the property and claiming title thereto under the sale thereof under the power contained in the security deed, had such interest therein as would authorize him to apply to a court of equity to enjoin the sale thereof under the levy of these tax fi. fas. Furthermore, as the State has no interest which would be served by the sale of this property under these tax fi. fas., and a sale thereunder would cast a cloud upon the title of the holder of the security deed and complicate the rights of the parties, a court of equity should enjoin such sale. There is no law which would authorize the State to sell this property under these tax fi. fas. for the purpose of paying the depositors of this bank. The function of accomplishing this purpose is lodged solely in the superintendent of banks.

■ It is further insisted by counsel for the defendants that the provision in the act of August 25, 1927, with which we have been dealing, is contained verbatim in section 10 of the general tax act of August 20, 1918 (Ga. Laws 1918, pp. 43, 78), and in section 11 of the general tax act of August 15, 1921 (Ga. Laws 1921, pp. 38, 82). A casual inspection of these sections of these two acts discloses that this contention is without merit.

■ Applying the principles above announced, the judge erred in denying the injunction and relief prayed.

*Judgment reversed. All the Justices concur, except*

HILL, J., dissenting. As I view this case the act of 1927 (Ga. L. 1927, pp. 195, 199), which provides how funds in the hands of the State superintendent of banks shall be paid out, is not applicable. It is not a case where there are funds in the hands of

the superintendent of banks to be paid out according to the priorities fixed by the act of 1927, supra. But it is a case between the State of Georgia and one who has purchased property at a foreclosure sale under a deed to secure debt where there is a lien for taxes against the property so purchased. The plaintiff purchased at that foreclosure sale, and, so far as the record shows, he has not paid to the superintendent of banks the amount bid at the foreclosure sale. The depositors in the bank are not parties to the suit; neither is the State superintendent of banks a party, and therefore the sole question is whether the property in controversy was subject to levy and sale for the taxes due on the property. If this were a contest between the depositors, and the superintendent of banks, and the State of Georgia, and the purchaser at the foreclosure sale, over funds in the hands of the State superintendent of banks, the situation might be different; but in the present state of the record, I am of the opinion that the property levied upon is subject to the taxes levied against it. The plaintiff bought the property with the lien for taxes against it, and the land itself is subject to those taxes; and therefore the court below did not err in denying the injunction prayed for. 26 R. C. L. 393, § 351 et seq. See *Planters Warehouse Co.* v. *Simpson,* 164 *Ga.* 190 (supra); *Stephens* v. *First National Bank of Newnan,* 166 *Ga.* 380 (supra).