## In re DUBLIN VENEER CO.

District Court, S. D. Georgia, Dublin Division.
Aug. 9, 1932.

C. C. Crockett, of Dublin, Ga., for Hyman Dunn and others.

G. C. Bidgood, of Dublin, Ga., for petitioning creditors.

Jones, Evins, Powers & Jones and Ralph Williams, all of Atlanta, Ga., for Interstate Bond Co.

Burch & Daley, of Dublin, Ga., for Laurens County.

W. W. Larsen, Jr., of Dublin, Ga., for the City of Dublin.

Jones, Johnston, Russell & Sparks and Chas. M. Cork, all of Macon, Ga., for Trustees in Bankruptcy.

Hendrix & Buchanan, of Atlanta, Ga., for appellee Viking Equipment Co.

M. H. Blackshear, of Dublin, Ga., for the bankrupt.

BARRETT, District Judge.

An involuntary petition in bankruptcy was brought against the Dublin Veneer Company. The alleged bankrupt denied insolvency. For reasons that then seemed satisfactory, receivers were appointed and directed to continue the operation of the business. The financial status of the business thus operated was not made clear until the final report, when it was disclosed that there had been a substantial loss. Up to that time neither the holders of the respective tax liens hereinafter mentioned nor the Viking Equipment Company were made parties, nor did any of them interpose objections to the continuance of the receivership. Upon the qualification of the trustee, by consent of all parties, the property here involved was sold free of liens and the respective liens or claims to priority attached to the money thus realized. There was turned over to the trustee by the receiver $2,701. The trustees have not sufficient funds with which to satisfy the tax liens, the lien of the Viking Equipment Company, and to pay the loss sustained in the operation of the receivers and the administration expenses.

Elaborate hearings were had by the referee and conspicuous ability and patience and thoroughness were displayed by him, and there is every evidence that the matters at issue, both as to fact and law, were ably presented by counsel. The referee decided that the order of payment should be: (1) Wages earned within three months of the date of the commencement of the proceedings; (2) insurance premiums; and (3) taxes, state, county, school, and city.

The taxes were abated, both because certain property, the reserve titles to which in the vendors were recognized as valid, was included in the tax assessment against the bankrupt, and to the additional extent to what it would cost to realize on such tax liens. It is understood there is no exception by the holders of the tax liens to such abatement. When therefore taxes are hereinafter referred to it will mean as thus abated.

The referee also decided that the sprinkler system, which was installed under a contract then held by the Viking Equipment Company reserving title in the vendor, was not of such value as to make any equity therein for the bankrupt estate, and therefore the trustees were ordered to disclaim title thereto.

One or more creditors of the receivers and trustees challenged the propriety of paying the wages or taxes ahead of their debts owing

by the receivers and trustees, and the trustees challenged the order directing the relinquishment of the title to the sprinkler system.

There is a rule in this district fixing a time limit of fifteen days from the date of the order for petition for review of such order. Certain creditors other than those filing the petition, but with the same character of interest, invoked the privilege of being protected by any decision that this court might make. The propriety of granting such request is shown by the following cases: In re Jamison Bros. & Co. (C. C. A.) 209 F. 541 (2); In re Green River Jockey Club (D. C. Ky.) 5 F. (2d) 259; In re Flanders Company (Sixth C. C. A.) 32 F.(2d) 654; In re Handy-Andy Stores (D. C. La.) 51 F.(2d) 98, 106.

For the reason that the insurance was for the protection of all parties in interest, including lienors, and for the further reason that there is no attack made upon the judgment of the referee as to the payment of such premiums, such order will be considered as final and is not to be disturbed.

### Findings of Fact.

Diligent study has been made of the voluminous record in this case, including the testimony that was given before the referee at the several hearings. By reason of the fact that there is no dispute as to the amount of the taxes and there is no need at this time to consider the detailed amount of indebtedness by the receivers and the trustees, it is unnecessary to make a finding as to them. The following facts are pertinent to the reserve title claim of the Viking Equipment Company:

(1) The president of the Dublin Veneer Company, C. T. Alexander, had full power to make contracts of purchase of machinery as well as other property for such company.

(2) In the matter of the purchase of machinery and such like it was customary for the president and also the secretary, P. W. Alexander, to sign the contract. In this case the president of the company, C. T. Alexander, after he had signed the contract, sent the secretary, P. W. Alexander, to have the contract signed before Mr. Grier, the notary public, and when the sprinkler system was received by the company it was known to the president that such contract had been executed by the secretary as well as by himself.

(3) The following is a copy of the execution of such contract and of the form of either attestation or acknowledgment or probate, as it may be construed, as appears thereon:

"Crawford & Slaten Co.
    (Contractor)
"By W. B. Crawford,
    (President)
"By ———
    (Secretary)
"In presence of { ———
    ———

"Dublin Veneer Co.
    (Owner)
"By C. T. Alexander,
    (President)
"By P. W. Alexander,
    (Secretary)
"In presence of { Bessie Stuckey.
    ———."

On the back of this instrument were the printed forms above referred to, which were filled out and signed as follows:

"Owner's Affidavit.

"State of Georgia, County of Laurens.

"I, B. F. Grier, a notary public in and for the county and state aforesaid, do hereby certify that on the 6th day of December, 1928, there personally appeared before me P. W. Alexander, who is personally known to me to be the V-Pres. & Secty. of Dublin Veneer Company, and being duly sworn, acknowledged that he signed and sealed the foregoing instrument as his free and voluntary act and as the free and voluntary act of said Dublin Veneer Company, that he has knowledge of the facts, and that the consideration for said instrument is actual and adequate and that it was given in good faith for the uses and purposes therein set forth.

    "P. W. Alexander.

"In witness whereof I have hereunto set my hand and Notarial Seal the day and year first above written.

    "B. F. Grier   [Notarial Seal]
        "Notary Public.
"My Com. expires 4—8—30.

"Contractor's Affidavit.

"State of Georgia, County of Fulton.

"I, Wesley Lane, a notary public in and for the county and state aforesaid, do hereby certify that on the 18th day of February, 1929, there personally appeared before me W. B. Crawford, who is personally known to me and known to me to be the president of Crawford & Slaten Co., and acknowledged that he signed and sealed the foregoing instrument as his free and voluntary act and as the free and voluntary act of said Crawford & Slaten Co., for the uses and purposes therein set out."

"In witness whereof I have hereunto set my hand and Notarial Seal the day and year first above written.

"Wesley Lane   [Notarial Seal]
"Notary Public State at Large, Ga.
"My Commission expires Jan. 11, 1932."

### Conclusions of Law.

■ The big question is as to the respective priorities of the tax liens and of the indebtedness of the receivers and trustees, representing the losses in operations. There are many decisions which bear somewhat on the subject but only a very few that are directly applicable. After protracted study I have concluded that a proper understanding of section 64 of the Bankruptcy Act (title 11, § 104, USCA) and section 67 of such act (title 11, § 107, USCA) will disclose that there is no conflict between them and that both can be given full effect. The essential to this is that there shall be appreciated a difference between taxes with a lien and taxes without a lien, and further that the bankrupt estate does not consist, as a part thereof, of the entire value of the property upon which there is a valid lien, but only the equity in such property.

■ Section 64 deals with priority of payments from funds arising from the bankrupt estate. If there be no funds there will be no distribution and therefore no priorities. Subsection (a) directs the payment of taxes. In my opinion this means taxes that have not liens. There was no need to direct the payment of taxes which were already secured by valid liens, but there was a need for authority to pay the taxes when there was no lien, both because of a desire to give priority and because it is at least questionable whether taxes come within the definition of provable claims under the statute. Apparently, under original section 64, taxes were to be paid ahead of all other claims, though by the amendment of 1926 they were affirmatively given the sixth place. As to taxes not being debts see Lane County v. Oregon, 7 Wall. (74 U. S.) 71, 19 L. Ed. 101, cited, among other places, in New Jersey v. Anderson, 203 U. S. 483, at page 492, 27 S. Ct. 137, 51 L. Ed. 284. See, also, Collier on Bankruptcy (13th Ed.) p. 1446, and citations.

Until the amendment of 1926 the question of the priority of taxes was not dealt with by section 64b, but by such amendment, as above stated, they were put in class 6, wages, among other claims, preceding taxes.

An analysis of section 67 discloses that the liens there dealt with may be summarized as those obtained by contract or by suit or proceeding at law or in equity, and are subject to attack upon the grounds therein stated. There is no treatment of liens created by a state without any consent or action or acquiescence on the part of the bankrupt. In Georgia in the most positive language liens are given for taxes. Park's Code of Georgia (1914) vol. 1, § 1140. Under the Bankruptcy Law of 1867 (14 Stat. 517) "A sale of the land by the assignee of a bankrupt does not divest the lien of the State upon the land for taxes due on it, even though sold by the assignee, free of encumbrance." Stokes v. State of Georgia, 46 Ga. 412 (1), 12 Am. Rep. 588, cited in Planters Warehouse Co. v. Simpson, 164 Ga. 190, 138 S. E. 55, and Felton v. McArthur, 173 Ga. 465, 160 S. E. 419. What possible reason is there to justify the protection of the validity of a mortgage lien and treating the bankrupt estate as comprising only the equity when the same principle is not applied to a tax lien, which is superior to the mortgage lien?

■ My conclusions therefore are:

(1) The bankrupt estate consisted of the property of the bankrupt which was unincumbered, if there were such, and the equity over and above the valid incumbrances; and that among such valid incumbrances were the tax liens involved in this case.

■ (2) The only assets that could be appropriated for distribution under section 64 were those that constituted the bankrupt estate.

(3) To take the property covered by the valid liens for taxes to pay for losses primarily incurred for the benefit of the general creditors would be the wrongful taking of one man's property to pay for the benefit of another.

■ (4) Some suggestion has been made that the holders of the tax liens, not having objected to the conduct of the business by the receivers, are now estopped from objecting to the payment of the expenses of such operation. This suggestion has no merit in this case, for there is nothing to disclose that the holders of such liens knew of such losses and there was no action taken to make them parties.

■ (5) While not material in the determination of this case—for there is sufficient to pay both the tax liens as abated and the wages, so far as I am advised—the necessary result of the above views is that the priority of wages applies only to the bankrupt estate and this does not disturb the validity of the tax liens.

In principle the conclusions above stated are in line with the cases of In re Green River

Jockey Club (D. C. Ky.) 5 F.(2d) 259 (1); In re Tresslar (D. C. Ala.) 20 F.(2d) 663; In re Monroe Lumber & Supply Co. (D. C. Pa.) 36 F.(2d) 1003; In re Cardwell (D. C. Tex.) 52 F.(2d) 158.

(6) The order of the referee directing the trustees to disclaim title to the sprinkler system in favor of Viking Equipment Company was correct.

In view of the testimony and under the authority of Saranac Mach. Co. v. Heyward (C. C. A.) 293 F. 499, the so-called printed "Owner's Affidavit" is justifiably construed as an attestation.

Even, however, if there be justification for denying the authority of such vice president and secretary to bind the purchaser, such contract was executed with the proper formality to justify its record by the contractor, Crawford & Slaten Company. Such "contractor's affidavit," under said Saranac Case, should be treated as an execution or re-execution of the contract properly attested by a notary public, and this would justify its record.

It is peculiarly fitting that a vendor reserving title by reason of a conditional sale contract should be able to protect himself as against all subsequent purchasers, lienors, or creditors by seeing to it that there shall be placed of record the terms under which he parts with possession of his property. The fact that it was not formally executed or acknowledged by the purchaser should not defeat the protection that the vendor has created for himself. It was properly held therefore that this conditional sale contract was properly executed and recorded and has priority over the trustee in bankruptcy, who occupied the position of a judgment lien creditor.

In Clarke Bros. v. McNatt, 132 Ga. 610, 613, 64 S. E. 795, 796, 26 L. R. A. (N. S.) 585, the Supreme Court of Georgia, in discussing a contract of conditional sale, says: "If the personal property is delivered into the possession of the vendee, the object is to provide a method of putting third parties on notice that the apparent title thus evidenced by possession is not in fact such, but that the title rests in the vendor until the condition of the sale shall be fulfilled."

Why is not this purpose fully accomplished by the vendor's having properly recorded such a contract? Who is as much interested in this accomplishment as the vendor?

The only decision I have been able to find covering this identical question is Shaw v. Poor, 6 Pick. (Mass.) 86, 17 Am. Dec. 347, which holds that, when there are two grantors in a deed and the signature of only one of them is so attested as to justify its record, this record is effective as to both grantors, at least presumptively.

(7) While the holders of the tax liens have not excepted to the finding of the referee that the sprinkler system claimed by the Viking Equipment Company was valued for taxes at $8,180 in the return of the Dublin Veneer Company to the county of Laurens and the city of Dublin for the year 1930 and at $5,562 for the year 1931, and that therefore the claims for taxes against the estate in bankruptcy for those years should be reduced accordingly, the Viking Equipment Company did except to such ruling.

This court concludes that such ruling was correct.

(8) An exception was made by the Yates-American Machine Company on the same principle as that set forth in the foregoing conclusion No. 7. The conclusion of this court thereto is that the ruling of the referee was correct.

The judgment of the referee is ratified and confirmed, except with the modification that the tax liens are superior to the claims for wages. There is no exception taken by the creditors of the receivers and trustees as against the wages being superior to their debts and therefore there is no determination of their respective rights.