COLLIER, sheriff, *et al. v.* GORMLEY, superintendent of banks.
CITY OF ATLANTA *et al. v.* GORMLEY, superintendent, *et al.*

Nos. 9686, 10019. DECEMBER 29, 1933.

*G. A. Huddleston, R. A. McGraw,* and *N. F. Culpepper,* for Collier et al.

*J. L. Mayson, C. S. Winn, J. C. Savage,* for City of Atlanta et al.

*M. U. Mooty, R. W. Martin, Howell, Heyman & Bolding,* and *W. P. Bloodworth,* contra.

RUSSELL, C. J.   R. E. Gormley as State superintendent of banks filed a suit for injunction against C. H. Collier, sheriff, and H. L. Culpepper, tax-collector, of Meriwether County, to enjoin the enforcement of an execution issued by the tax-collector against Mrs. George Crosley, and levied upon land the title to which had been conveyed by Mrs. Crosley to LaGrange Banking & Trust Company, whose assets were at the time of the levy in the hands of the superintendent of banks for the purposes of liquidation.   At an interlocutory hearing the judge of the superior court overruled a general demurrer and granted an interlocutory injunction, and the defendants excepted.   The facts alleged in the petition were substantially as follows:   Mrs. Crosley executed a deed conveying the land to LaGrange Banking & Trust Company on December 29, 1927, to secure an indebtedness of $1700.   The amount of this debt is now in excess of the value of the land.   The bank failed and went into liquidation on April 29, 1931.   On or about January 1, 1933, the sheriff of Meriwether County levied upon the land under a tax execution issued against Mrs. Crosley for state, county, and school taxes for the year 1931.   The land so levied on is now the property of the superintendent of banks as statutory receiver for the use of LaGrange Banking & Trust Company, and the levy is illegal for the reason that the property is "in custodia legis." Since the act of August 25, 1927, amending the banking act of 1919, the claims of depositors have priority and preference over state and county taxes.   Unless the court should issue an order restraining the sheriff and tax collector from selling the property, the same "will be taken from the possession, custody, and control of petitioner."   The plaintiff has no adequate remedy at law.   The prayers were for injunction, for a "decree that the debts due to depositors have a priority over taxes as to the property levied on," and for general relief.

■ One question raised by the record is whether the tax execution issued against Mrs. Crosley for taxes accruing in the year 1931 constituted a lien superior to the security deed executed by Mrs. Crosley to the bank on December 29, 1927, the bank having become insolvent and gone into the hands of the superintendent of banks for liquidation on April 29, 1931. This question should be answered in the affirmative. The taxes were assessed against Mrs. Crosley, the owner of the equity of redemption and the person in possession. Although the legal title had been conveyed to the bank as security for an indebtedness, the complete title was nevertheless subject to taxation as a whole, and a sale made in pursuance of a proper assessment and execution would have divested both the equity of redemption held by Mrs. Crosley and the legal title which had been conveyed to the bank as security. *Real Estate Loan Co.* v. *Union City,* 177 *Ga.* 55 (2) (169 S. E. 301). The banking company, the grantee in the security deed, did not come into the possession of the superintendent of banks for liquidation until April 29, 1931; whereas the lien for the taxes for the year 1931 had attached as a lien upon the property as of January 1 of that year. Civil Code (1910), § 3333; Ga. L. 1913, p. 123, Park's Code, § 1116(1). If the bank had not failed and come into the possession of the superintendent of banks as an insolvent institution, the bank itself could not have rightly claimed that the lien for taxes was not superior to the security deed. The assets of the bank having gone into the possession of the superintendent of banks after the tax lien had become fastened upon this property, has the priority of the tax lien been lost or destroyed by reason of this fact, and is it now inferior to the claims of depositors? Section 19 of article 7 of the banking act of 1919 (Ga. L. 1919, p. 135), as amended by the act of 1927 (Ga. L. 1927, p. 195), is as follows:

"Sec. 19. Order of paying debts. After the payment of the expenses of liquidation, including compensation of agents and attorneys, and after the payment of unremitted collections, the order of paying off debts due by insolvent banks shall be as follows: (1) Debts due depositors. (2) Debts due for taxes, State and Federal. (3) Judgments. (4) Contractual obligations. (5) Unliquidated claims for damages and the like. Provided, that nothing herein contained shall affect the validity of any security or lien held by any person or corporation."

This statute purports to declare certain priorities to be observed by the superintendent, but it is apparent from the specific language used that it was intended to deal only with the order of paying "debts due by insolvent banks." The taxes involved in this case were assessed against the real estate as the property of Mrs. Crosley, the execution was issued against her, and as between her and the bank she was the person primarily liable for the tax. Civil Code (1910), § 1018; *Bank of the University* v. *Athens Savings Bank*, 107 *Ga.* 246 (33 S. E. 34). The taxes did not constitute a debt due by the insolvent bank, but the liability rested upon Mrs. Crosley, notwithstanding the execution was a prior lien against the property and was even superior to the security deed held by the banking company. In view of the plain terms of the statute, it was held in *Baggett* v. *Mobley*, 171 *Ga.* 268 (155 S. E. 334), that debts due to depositors were superior to an indebtedness *due by the bank* for taxes which accrued before the seizure of the bank by the superintendent as an insolvent institution. The same was held in *Felton* v. *McArthur*, 173 *Ga.* 465 (160 S. E. 419). In each of those cases, however, the indebtedness for taxes was an indebtedness which had accrued directly against the bank, and executions were issued accordingly. In the instant case the facts were different, in that the taxes were assessed and execution issued therefor against a third person who was merely a debtor of the bank and had conveyed property to the bank as security. The *Baggett* and *Felton* cases are not authority for the contention made in behalf of the superintendent of banks in the present case. When the superintendent took possession of the assets of this bank, he thereafter held the security deed upon the same terms and conditions as to priority that existed before the bank failed. The title to the property was in the bank as security, but it was incumbered with a prior lien for taxes. The failure of the bank did not impair this priority. The priority is as to *debts due by the bank,* and not as to debts due by some other person, such as taxes due by a third person to the State and the county. If Mrs. Crosley had executed a mortgage to some other person before obtaining the loan from the bank and executing the security deed therefor, would the insolvency of the bank operate to destroy the priority of the mortgage? If Mrs. Crosley had been sued and a judgment obtained against her and an execution based thereon had been duly recorded on the gen-

eral execution docket, and if she had thereafter conveyed her land as security to the bank, would the failure of the bank affect the lien of the judgment creditor? It is our opinion that each of these questions should be answered in the negative.

With reference to "the order of paying off debts due by insolvent banks," it was held in the recent case of *Bank of Hampton* v. *Smith,* 177 *Ga.* 532 (170 S. E. 508), that the act of 1927 "contemplates preferences as between only general debts owed by such banks." We conclude that the contention of the defendant in error as to priority is without merit.

The decision in *Gormley* v. *Askew,* 176 *Ga.* 210 (167 S. E. 600), having been concurred in by only four Justices, is not binding upon the Supreme Court as a precedent; and to the extent that it may conflict with the present ruling, it will not be followed, the author of the opinion in that case being after further reflection convinced, with the other Justices, that the decision therein rendered, so far as it related to priority, was incorrect.

■ Nor does the petition allege sufficient facts to show an interference with the superintendent's possession of assets within the meaning of sections 3 and 5 of article 7 of the banking act of 1919. Construing the petition most strongly against the plaintiff, as must be done on general demurrer, we think it alleges only that the legal title to the property was conveyed to the bank as security, and that the possession and control of the physical property still remain in Mrs. Crosley, the bank's debtor. The lien for the taxes as charged against the debtor being a valid and superior claim against the property, the superintendent could not enjoin the levy and sale unless he was in the possession and control of such property. This was not a claim *against the bank,* and there is no provision either in the banking act or in any amendment thereto under which such a claim could be filed with the superintendent so long as the property has not been reduced to actual possession by him. The superintendent is a mere statutory receiver, and his powers and duties are defined by law. Accordingly, the prosecution of a claim in favor of another person against property of an insolvent bank's debtor can not be enjoined at his instance, unless authority for so doing can be found in the banking laws. It is provided in section 3 that "the taking possession of any bank by the superintendent of banks shall be sufficient to place all assets and property of such

bank, of whatever nature, in possession of the superintendent of banks, and shall operate as a bar to any attachment or any other legal proceedings against such bank or its assets; and no lien shall be acquired in any manner binding or affecting any of the assets of such bank after the posting of such notice or taking possession of any bank by the superintendent, and every transfer or assignment by such bank or its authority, of the whole or any part of its assets, after the posting of such notice or the taking possession of such bank, shall be null and void." Section 5 is as follows: "On taking possession of the assets and business of any bank, as in this act authorized, the superintendent of banks shall forthwith give notice of such action to all banks and other persons or corporations holding or in possession of any assets of such bank. No bank or other person or corporation shall have a lien or charge for any payment, advance, or clearance thereafter made, or liability thereafter incurred, against any of the assets of the bank, of whose assets and business the superintendent shall have taken possession as aforesaid."

These are the only provisions of law under which injunctions have been granted or could be granted on the petition of the superintendent of banks in cases of this kind, and these provisions do not authorize the grant of an injunction to prevent the enforcement of a valid and superior lien against property of some other person, the title to which has been conveyed to the bank as security for an indebtedness, but the possession of which has not been taken by the bank or the superintendent. Even if on identical facts an injunction might be granted on the petition of a court receiver (cf. Civil Code of 1910, § 5478; *National Bank of Augusta* v. *Richmond Factory*, 91 *Ga.* 284, 18 S. E. 160; *Empire Lumber Co.* v. *Kiser*, 91 *Ga.* 643, 17 S. E. 972; *Blumenfeld* v. *Citizens Bank & Trust Co.*, 168 *Ga.* 327, 147 S. E. 581; *Castleberry* v. *Long*, 176 *Ga.* 293, 167 S. E. 883; Hitz v. Jenks, 185 U. S. 155 (4) (22 Sup. Ct. 598, 46 L. ed. 851; Grosscup v. German Savings & Loan Society, 162 Fed. 947 (2) ; Slade v. Massachusetts Coal Co., 188 Fed. 369; Field v. Kansas City Refining Co., 296 Fed. 800; Cherry v. Insull Investments Inc., 58 Fed. (2d ) 1022), the same rule would not necessarily apply in favor of the superintendent of banks, who has no authority except that which is expressly or impliedly provided by the banking laws.

While the title to the land involved in the present controversy had been conveyed as security to the bank, the land itself was not included in the assets of which the superintendent took possession solely by his seizure of the bank as an insolvent institution. The legal title merely secured the promissory note of the debtor, and the note alone as a secured indebtedness was to be considered as a part of the assets of the bank. This court has in several cases sustained the right of the superintendent to an injunction where a levy would interfere with his actual possession of property constituting a part of the bank's assets. *Gormley* v. *Askew,* 176 *Ga.* 210 (167 S. E. 600) ; *Baggett* v. *Mobley,* 171 *Ga.* 268 (155 S. E. 334) ; *Felton* v. *McArthur,* 173 *Ga.* 465 (160 S. E. 419). But we have never gone so far as we are requested to go in the present case, and we can not agree that the instant petition stated sufficient cause for an injunction. The facts are materially different from the cases last cited, and they do not fall within the rule enunciated in *Bennett* v. *Green,* 156 *Ga.* 572 (119 S. E. 620). While it did not appear in that case that the superintendent had obtained possession of the property, the liens it was sought to enforce were *inferior* to the bill of sale or security deed of the bank, and the superintendent also contested the correctness of the amounts claimed in the laborer's liens.

By the act of August 21, 1922 (Ga. L. 1922, pp. 63, 66) it was provided that the superintendent "may, when in his opinion it is necessary, in order to fully protect and benefit the said bank and its creditors to the extent of any and all equities which said bank may have in any property, real or personal, by reason of any mortgage, assignment, security deed, or other proper legal claim attaching thereto, buy in said property or pay off such secured claim, and it is hereby authorized and empowered to use any of the funds of said bank for that purpose to the extent the same may be necessary or required." It was the evident purpose of this statute to provide the remedy for the superintendent in a situation like the present. The tax lien here in question was a "proper legal claim attaching" to the property; and, as we have seen above, the lien was valid and was superior to the security deed. Since the superintendent had not reduced the property to his possession, he should allow the sale under the tax fi. fa. to proceed according to the right of the plaintiff therein and "buy in said property," unless he should see fit to "pay off said secured claim."

On the other hand, if the property had actually come into the possession of the superintendent, the State and county as the plaintiffs in execution, or the tax-collector acting for them, would seem to have a remedy by the presentation of a claim under the provisions of section 15 of article 7 of the original banking act as amended by section 4 of the act of 1927 (Ga. L. 1927, pp. 195, 198). In such case it would be the duty of the superintendent to allow the claim and to apply the proceeds of the property first toward the payment of the same, the remainder if any to be appropriated to the payment of debts due by the bank in the order prescribed by law. A claim so presented would not amount to a claim for taxes *due by the bank* within the meaning of section 19, but would merely assert a prior lien *against specific property* in the hands of the superintendent, he having taken actual possession thereof and his possession being subject to such claim. The language of section 19 as amended by the act of 1927, to the effect that nothing therein contained should "affect the validity of any security or lien held by any person or corporation," is broad enough to protect a prior tax lien under such circumstances. Section 13 of the original act could have no application to a claim of this kind, since it applies only to claims "against the bank." In addition to the procedure above suggested, still other remedies might be available to the plaintiff in a tax fi. fa. See Civil Code (1910), § 1141; *Stephens* v. *First National Bank,* 166 *Ga.* 380 (143 S. E. 386).

From what has been said, the court erred in not sustaining the general demurrer and dismissing the petition.

The rulings stated above will cover and control the case of *City of Atlanta* v. *Gormley,* and therefore the two cases are decided together. In the latter case, the petition alleged possession by the superintendent of banks; and therefore the court did not err in overruling the general demurrer, although the tax fi. fas. represented valid and superior liens against the property. The evidence, however, disclosed the fact that the superintendent had taken possession of only a part of the property in question; and under the principles stated above, the court properly granted an injunction as to the property which had come into the possession of the superintendent of banks, but erred in granting an injunction with respect to the other property.

*Judgment reversed* in *Collier* v. *Gormley.* *Judgment affirmed in part and reversed in part* in *City of Atlanta* v. *Gormley.* *All the Justices concur, except Hill, J., absent for providential cause.*