Harman and another *vs.* Allen & Co.

No. 8.—ABRAHAM HARMAN and another, executors, &c. of Shadrach Winkler, deceased, plaintiffs in error, *vs.* R. A. ALLEN & Co. defendants.

[1.] A *lessee* of steam saw mills is neither *agent* nor *superintendent*, in contemplation of the Act of 1842. He may create a lien on the property for services rendered, or for supplies furnished the mills, during his occupancy, to the extent of his unexpired term, but no further. The tenant cannot, by his contracts, encumber the reversion.

Claim, in Chatham Superior Court. Decision by Judge H. R. JACKSON, June 2d, 1851.

This was an application for summary process, under the Acts of December 11th, 1841, December 17th, 1842, December 24th, 1847, (*New Digest,* 428)—to enforce the lien of R. A. Allen & Co. upon the Savannah steam saw mill, for timber furnished said mill. The affidavit stated, that Abram Harman and Zachariah Winkler, as executors of Shadrach Winkler, were the owners of the mill, and that Amos Webb was their agent, to whom the timber was delivered. Harman and Winkler, as executors, interposed a claim to the property, and upon the trial of this claim, the Jury found a special verdict; among other things, they found, " that at the time said judgment was obtained, one Amos Webb was the lessee of said mill; and that the freehold of the same belonged to the claimants, as executors of Shadrach Winkler; that the debt for which the said judgment and execution were obtained, was contracted by the said Webb, the lessee of the mill, while the same was in his exclusive possession, custody and control; and that the said executors had no interest with, nor relation to the said debt, but that the same was contracted by the said Webb, for his own use and benefit, he being in possession of said mill, and exclusively running the same ; and the said supplies being furnished, while the mill was thus in his possession."

Upon the facts thus found, the presiding Judge held, that the

property was subject to the execution, under the acts before re-
ferred to.

Upon this decision error has been assigned.

CHARLTON, WARD & OWENS, for plaintiff in error.

LAW and BARTOW, for defendant.

*By the Court.*—LUMPKIN, J. delivering the opinion.

This writ of error is sued out to reverse a judgment of the
Circuit Court, awarded on a special v,erdict. From the facts
found by the Jury, it seems that the Savannah steam saw mills, own-
ed by the estate of Shadrach Winkler, deceased, were leased to one
Amos Webb. During the term, the lessee contracted a debt with
Robert A. Allen & Co. for timber furnished for the use of said mills,
amounting to $688 44. Webb failing to pay the account when
demanded, the creditors applied for, and obtained an execution, un-
der the lien laws of this State, and caused it to be levied on property
" *attached to, and forming a part of said mills.*" The executors
of Winkler resist the proceeding, on the ground that the free-
hold is not liable for the contracts of the tenant, made as this
was, for his exclusive use and benefit, and in which the pro-
prietors of the fee, had no interest whatever.

The lien given by the Act of 1842, and the summary remedy
provided for its enforcement, (*New Digest,* 428,) are in behalf
of the persons who are employed by the " owner, agent or su-
perintendent of the mills ;" or for services rendered, or for sup-
plies of any description, which may be furnished such steam
mill.

It is clear that a lessee is neither *agent* nor *superintendent,* in
contemplation of the Statute. He must therefore be the owner
of the property, or otherwise the Act does not apply to him at
all. But he is the qualified owner of the mills ; and it
was competent for him, as such, to bind the property for the un-
expired term for which it was let. Beyond this he could not go.

It would be intolerable to hold, that he could create liens

upon the reversion, *ad libitum*, for stocks and other materials consumed during his temporary occupancy.

It has been contended that the words *agent and superintendent* include those who, *de facto*, control the property, irrespective of the ownership.   If so, then, a mere trespasser or disseizor, who wrongfully obtains the custody, might encumber the estate with the most ruinous burdens.   Such we apprehend, could not have been the intention of the Legislature.   None but the rightful owner, his agent or superintendent, can exercise this power; and inasmuch as the tenant, for the time being, is the rightful owner, he may, by his contracts, bind the property to the extent of his interest, but no further.

The judgment must therefore be reversed.