WILLIS L. CALLAWAY, plaintiff in error, vs. JAMES D. FREEMAN, defendant in error.

F. sells a town lot to R. and S., and takes their notes for the purchase money, giving them a bond to make titles, when the money is paid· The vendees go into possession, and employ C. to make certain improvements; C. files and records his mechanic's lien, and sues and recovers judgment on his claim against R. and S. *In the meantime the purchasers* finding they are unable to pay, agree to rescind the contract, taking up their notes and surrendering to F. his bond for titles. The lot is levied on by the *fi. fa.,* in favor of C., against R. and S., and claimed by F.

*Held,* That the property is not subject to the debt, notwithstanding F. had knowledge of the work, while it was being done, and made no objection.

Claim, in Spalding Superior Court. Tried before Judge BULL, at May Term, 1859.

On the 11th day of January, 1854, James D. Freeman, the defendant in error, sold a hotel, in the city of Griffin, to William B. Rowell, for three thousand four hundred and eighteen dollars, for which he took from Rowell his three promissory notes; one for $1,000, payable one day after date; one for $1,138, payable by the first day of January, 1856, and one for $1,280 00, payable the first day of January, 1857, and executed to Rowell his bond, conditioned to make titles to said hotel, upon the payment of said notes. Rowell went into the possession of the property, and with one Benjamin J. Sanders retained the possession about six months, keeping a public house. During this time Callaway, the plaintiff in error, a carpenter, did certain work and repairs in and upon said hotel, and recorded his claim for said work as a lien on said property, in pursuance of the Act of 1837; upon his account for the work and repairs, he afterwards brought suit against Rowell and Sanders. Sanders alone was served with process, and plaintiff proceeded against him as one of two partners served, as provided by statute, and at November Term, 1856, obtained judgment for the sum of $451 25, besides cost, and upon which an execution

was issued to be levied upon the hotel, and said judgment to be paid in preference to any other claim, as provided by law. The execution was accordingly levied upon the hotel, when James D. Freeman interposed a claim to said property.

It was further in proof, that the contract for the sale of the hotel was rescinded about the last of the year 1854 or 1855. Freeman gave up and surrendered the notes, given for the purchase money, and Rowell and Sanders surrendered and delivered up Freeman's bond for titles.

During the argument by counsel before the jury, after the testimony had closed, counsel for plaintiff stated, that they had just learned that they could prove, that Freeman had notice that plaintiff was doing the work at the time, and made no objection thereto, but allowed him to go on, and they proposed to prove this fact. This the Court refused, and counsel excepted.

The Court charged the jury, that when a party was in possession of property under a bond for titles, and the purchase money unpaid, and the contract of sale was afterwards rescinded, that a mechanic's lien for work done while the vendee or obligee was in possession, would not attach, unless the owner had notice that the work was being done, and did not object, or in some way assented to or ratified it; and in that case, the action for the work and repairs done, should be brought against the owner or holder of the legal title to the property; and that the property in this case, the defendant in *fi. fa.* never having title, was not subject to the mechanic's lien, or the *fi. fa.*; and directed the jury to find the property not subject. To which charge and direction, counsel for plaintiff excepted.

GREEN & MARTIN, for plaintiff in error.

L. T. DOYAL, *contra.*

*By the Court.*—LUMPKIN J. delivering the opinion.

Freeman sold to Rowell, or you may say, to Rowell and Sanders, for they seem to have become jointly interested in the property, a house and lot, in the town of Griffin in January, 1854, took three notes for the purchase money, and gave his bond to make titles when the notes were paid. The purchasers employed Callaway to make some repairs upon the building; occupied the premises some six months, and finding that they could not pay for the property, the contract was rescinded; Freeman returning to them their notes, and they surrendering up to him his bond for titles. Callaway filed and recorded his lien under the Acts of 1834 and 1837, *(Cobb,* 555, 557,) and subsequently sued and obtained judgment against Rowell and Sanders, and caused the execution issuing thereon, to be levied on the lot. Freeman interposed his claim, and the question being one of law, it was submitted to the Court; and the Judge decided that the property was not subject; and that ruling is assigned as error.

After the argument had commenced, Callaway proposed to introduce testimony before the Court, that while the work was progressing, Freeman had knowledge of it, and made no objection. The circuit Judge refused to hear the evidence, and this also is alleged as error. Believing that the proof should have been heard, we shall treat the case as though it were in; and we are clear, that the Court was right in holding, that the property was not subject to the mechanic's lien.

In *Harman and another vs. Allen & Co.,* 11 *Ga. Rep.* 45, this Court held, that under the lien Acts of this State, one could only bind property to the extent of the interest which he had in it. We adhere to this decision. What then was the interest which Rowell and Sanders had in this lot? None, as against Freeman, until it was paid for. By the Act of 1847, *(Cobb,* 517) Freeman could have obtained judgment

on his notes, filed a deed to the purchasers, sold the lots, and been entitled to the proceeds in preference to *any* other lien. Such is the express language of the statute.   In other words, the vendor's lien, under the law, is paramount to that of the mechanic, or of any body else, and it is right; it is his property until paid for.   He could, upon the failure of the vendee to pay the purchase money, have ejected him, regardless of any incumbrance which the purchaser may have created.

What are the rights of the mechanics?   Looking to the interest of all parties, we hold that it is the privilege of the mechanic to tender to the vendor the purchase money. This was all he was entitled to, and thus have redeemed or rescued the property from this prior lien; and if, from its enhanced value, by reason of the improvements he put upon it, he could thus save himself, very well; otherwise it was his misfortune to have worked for those who were unable to pay him, and who had no right to bind that property for his security.

And suppose Freeman did stand by, and see those repairs made without objecting, he had no right to interfere. He had sold the property, and had a right to suppose, that the contract would be performed on the part of Rowell and Sanders; and what right had he to gainsay the transaction between his purchaser and Callaway.

Judgment affirmed.