HARDIN *v.* CHATTANOOGA SOUTHERN RAILROAD CO.

One in possession of land under a bond for title, with a part of the purchase-money paid, is not the "owner" of such land within the meaning of the act of November 11, 1889, imposing upon railway companies the duty of erecting and maintaining cattle-guards at designated points along their lines of road.

Argued April 5, — Decided April 27, 1901.

Action for penalty.　Before Judge Henry.　Chattooga superior court.　September 12, 1900.

*C. L. Odell, W. H. Ennis,* and *Denny & Harris,* for plaintiff.
*J. M. Bellah* and *McHenry & Maddox,* for defendant.

LUMPKIN, P. J.   The complaint made in the present bill of exceptions is that the court below erred in dismissing on demurrer a suit instituted by Hardin against the railroad company.   His action was based upon the provisions of sections 2243-2246 of the Civil Code, which relate to the duty of railroad companies to erect and maintain cattle-guards, and prescribe what shall be the liability of such companies for failure to comply with the requirements therein mentioned.   He sought to bring his case within the statutory law embraced in those sections, by alleging in his petition, with respect to the ownership of "the lands to be affected by" the cattle-guard therein referred to, "That petitioner is now, and was on or before October the 9th, 1899, in possession and control [of], and held under bond for title, with part of the purchase-money paid, 60 acres of" a designated lot of land through which the railroad of the defendant company ran, and which adjoined the premises of another named person whose lot the railroad also traversed.   One of the grounds of the demurrer was that the facts alleged in Hardin's petition did not show that he was "such owner of said lot of land" as the law embraced in section 2243 of the Civil Code contemplated. We think this point was well taken, and should control our decision upon the question whether or not the trial judge erred in dismissing the plaintiff's action.   It has heretofore been definitely ruled that: "Relatively to one who is not the owner of cultivated lands through which the track of a railroad company runs, such company is under no duty   .   .   to erect, keep, or maintain cattle-guards for the protection of crops growing upon such lands;" but that, in view of the provisions of the act of November 11, 1889, now to be found in the sections of the code above cited, "for a breach of duty imposed by that statute the owner of the lands only is entitled to maintain an action."   See *Florida Central Railroad Co.* v. *Judge,* 100 *Ga.* 600.   It appeared in that case that the plaintiff "had been engaged in conducting a farm upon a tract of land owned by his father; that this farm was crossed by the track and right of way of the defendant company," and that, because of its failure to erect and maintain proper cattle-guards, "domestic animals of various kinds entered upon his crops and destroyed them." As he was not the owner of the tract of land in question, but at best a mere tenant of such owner, we without difficulty reached the conclusion that a general demurrer to his petition should have been

sustained. Does Hardin, merely because he is in possession of land under a bond for title, with part of the purchase-money paid, stand upon any better footing than would a tenant of the holder of the legal title? In other words, can Hardin logically be regarded the "owner" of the premises in the sense in which that term is employed in the statute upon which he predicates his right to maintain his action? If so, then his vendor, who still retains the legal title and under whom he holds actual possession of the land, would have no right to demand the protection afforded by law to "adjoining landowners" with respect to the erection and maintenance of cattle-guards; for Hardin, and not his vendor, would be "the owner of the lands to be affected by such cattle-guards," who is referred to in section 2243 of the Civil Code. Certain it is that the statute contemplates that no one save such "owner" can maintain an action, and both Hardin and his vendor can not answer that description.

"The word 'owner' has no technical meaning, and, being nomen generalissimum, should, especially when used in a remedial statute, be construed liberally in favor of the parties whom it is the duty and intention of the legislature to protect." 1 Hare's Am. Const. Law, 355. "Under different circumstances, and having regard to the different objects of various statutes in which the word has been used, 'owner' has been held to mean the person having the legal title, or the one who has the equitable estate, the mortgagor or the mortgagee. And in more than one instance it has been held to include every one who has an interest in the land." 17 Am. & Eng. Enc. L. 304. In the present instance, however, it is evident that the legislature did not intend "to include every one who has an interest in the land," but the real owner thereof as against the world at large—the one person whose right and title thereto must, as matter of law, he held paramount to the claims of all others who may have a mere incidental interest therein or control over the same. Hardin is not, under his own statement of the facts of the case, an "owner" in any such sense. Imagine the very natural state of mind of his vendor if, in a controversy to which the latter was an interested party, we were to hold to the contrary! Though it would seem scarcely necessary to fortify the conclusion just announced by the citation of authority, yet we will briefly refer to a number of decisions by this court which are more or less in point. The in-

quiry arose in the case of *Callaway* v. *Freeman,* 29 *Ga.* 408, whether or not, under a statute providing for a special mechanic's lien on property upon which improvements were made, a holder of a bond for title who was in possession of a house and lot under his contract of purchase was to be regarded the owner of the same.    This question was answered in the negative, and the ruling made was followed in *Walker* v. *Burt,* 57 *Ga.* 20.    It appeared in the case of *Tanner* v. *Bell,* 61 *Ga.* 584, that a purchaser of land took a deed thereto, at the same time giving to his vendor a mortgage thereon to secure the payment of the purchase-money; and this court held that "the vendee, having an absolute deed of conveyance, [was] the owner within the meaning of the lien laws of this State."    Another illustration of the important part the legal title plays in the determination of the question of ownership is afforded by the case of *Morrow* v. *Sawyer,* 82 *Ga.* 226, wherein the ruling was announced that a tenant holding over and beyond his term could be summarily dispossessed by a creditor of his original landlord whose claim of ownership. was based upon a security deed only.    In *Mixon* v. *Stanley,* 100 *Ga.* 372, a mortgagee sought to gain recognition as an "owner," but it was held that: "As a mortgage does not in this State pass title to the mortgagee, [he] is not an 'owner' of the mortgaged property, and therefore is not entitled under section 909 of the Civil Code to redeem land upon which he held a mortgage, where the same was sold under a tax execution against the mortgagor." It is proper to add, in order that no one may be misled by our citing this decision approvingly, that "in 1898 the General Assembly changed the code so as to allow lienholders or any person interested in the land or any creditor to redeem," to which fact Chief Justice Simmons took pains to call attention in an opinion delivered by him in the more recent case of *Bank of the University* v. *Athens Savings Bank,* 107 *Ga.* 246, 249.    The effect of this change in the law was, however, not to create a mortgagee an "owner," but merely to declare that, in his true capacity as a mere lienholder, he should be accorded rights to which he was not theretofore legally entitled. So far as we are informed, the unmistakable trend of the judicial utterances of this court has ever been to discourage the idea that the holder of a bond for title can have more than a bare equitable interest in the subject-matter of his purchase, since his claim thereto must necessarily be based upon a contract which in terms provides

that he shall not become the owner until he complies with his obligation to pay for the property.

<div align="center">

*Judgment affirmed. All the Justices concurring.*