**LEWIS, Appellant, v. CARPENTER et, Appellees.**

Ohio Appeals, Second District, Montgomery County.

No. 2102. Decided March 15, 1950.

**120**

Joseph R. Garber, Joseph W. Sharts, Dayton, for appellant.
Herbert S. Duffy, Atty. Genl., Columbus, for appellees.

## OPINION

By THE COURT:

Submitted on motion of plaintiff-appellant to amend his assignments of error by adding thereto two additional grounds of error.

The notice of appeal was filed February 13, 1950. The fifty day period within which assignments of error may be filed has not expired.

Motion to amend sustained.

MILLER, PJ, and HORNBECK, J, concur.

### ON MOTION TO DISMISS APPEAL

No. 2102. Decided March 21, 1950.

Joseph W. Sharts, Joseph R. Garber, Dayton, for plaintiff-appellant.
Herbert S. Duffy, Atty. Genl., Charles A. Linch, Asst. Atty. Genl., Columbus, for defendants-appellees.

By THE COURT:

Submitted on motion of the defendants-appellees to dismiss the appeal on questions of law and fact.

This action involves the revocation of a real estate broker's license by the State Board of Real Estate Examiners. An

appeal was taken to the Common Pleas Court of Montgomery County, Ohio, which court affirmed the decision of the State Board. From the judgment of the Common Pleas Court affirming the State Board this appeal on questions of law and fact was taken.

This proceeding is wholly statutory and is not an action in chancery. The questions raised by the plaintiff-appellant have been adequately answered by our Supreme Court in **Farrand v. State Medical Board, 151 Oh St 222, 85 N. E. (2d) 113.**

Motion to dismiss the appeal on questions of law and fact is hereby sustained. The appeal will stand as an appeal on questions of law. The appellant may file his bill of exceptions in conformity to the provisions of Supplement to Rule VII of this Court. It appearing that appellant has filed assignments of error and brief, and also the appellee has filed an answer brief, no order is necessary with respect to the filing of assignments of error and briefs.

So ordered.

MILLER, PJ, HORNBECK and WISEMAN, JJ, concur.

### ON APPEAL AFFIRMING AN ORDER

No. 2102. Decided December 21, 1950.

By MILLER, PJ:

This is a law appeal from the judgment of the Common Pleas Court affirming an order of the Board of Real Estate Examiners revoking the appellant's broker's license for violating paragraph 20 of §6373-42 GC. The specific charge is that the appellant, Paul E. Lewis, offered real estate for sale without the knowledge and consent of the owner or his authorized agent.

We have carefully examined the transcript of the testimony in the proceedings had before the State Board of Real Estate Examiners and find:

The record reveals that in January, 1948, appellant was employed as a real estate salesman associated with one Nolan Lewis, a real estate broker, doing business as American Realty Company in Dayton, Ohio.

On November 8th, 1947, one Lillie Shapiro, holder of the legal title to certain real estate, entered into a contract wherein, in consideration of Ten Thousand Dollars ($10,000.00), Fifteen Hundred Dollars ($1500.00) down and the balance at the rate of not less than Seventy Five Dollars ($75.00) per month, agreed to sell said property to James H. Binion and

Miriam C. Binion. On payment of the total purchase price, Lillie Shapiro and her husband were to convey the property to the Binions by general warranty deed.

Under the terms of this contract, the buyers were not to assign the contract without written consent of the seller.

On January 15, 1948, the Binions listed the same property with the American Realty Company for sale. The appellant, Paul E. Lewis, took the listing. The property was advertised by the American Realty Company.

In response to the advertisement, J. A. Bullard, the complainant before the Board of Real Estate Examiners, contacted the American Realty Company by telephone, and talked to the appellant, Paul E. Lewis, and made arrangements to view the premises.

Sometime in February, 1948, the property was shown to the complainant by Mr. Clarence Doellman, and the price being more than complainant desired to pay, no contract for purchase was entered into.

Thereafter, all negotiations concerning said property were conducted on behalf of the American Realty Company by the appellant, Paul E. Lewis.

The complainant subsequently made an offer to purchase to the Binions through appellant. Prior to the submission of this offer to the Binions, appellant checked the real estate records and found that the holder of the legal title was Lillie Shapiro. Appellant also knew of the clause in the Binion-Shapiro contract stating that the Binions had no right to assign their contract without the written consent of Lillie Shapiro.

Thereafter, on February 19, 1948, the appellant advised the complainant, Mr. Bullard, that a third party was involved, but that he was willing to go along. Mr. Lewis had not talked to Lillie Shapiro, and was not advised that she would be willing to permit the assignment of the contract from the Binions to the complainant, Mr. Bullard.

A contract was signed on February 23, 1948, between Bullard and the Binions. Mr. Bullard paid Two Thousand Dollars ($2,000.00) down under the terms of this contract. Five Hundred Dollars ($500.00) was for commission to the American Realty Company, for negotiation of the sale, and Fifteen Hundred Dollars ($1500.00) to the Binions.

Thereafter, when the Binions could not be found, Mr. Bullard attempted to make payments under the Binion-Shapiro contract directly to Lillie Shapiro. Mrs. Shapiro refused to accept Mr. Bullard's payments, stating, in effect, that they had not consented to the assignment of the contract by the

Binions to the complainant, Mr. Bullard. The appellant has since offered to return the sum of Five Hundred Dollars ($500.00), the commission paid to the American Realty Company, but the complainant, Mr. Bullard, has refused to accept such payment.

The appellant, Mr. Lewis, contends that he sought the advice of counsel, Mr. Robert J. Kelly, Attorney at Law, Dayton, Ohio, in negotiating this alleged sale, and therefore, acted in good faith.

The testimony of Mr. Kelly on page 66 is as follows:

"I advised him, Paul Lewis, that in my opinion the contract could not be assigned, and that if he wanted to sell the property, unless the consent of the owner could be secured, it would be necessary to have a further land contract in which the original contract shall remain in full force and effect, and Mr. and Mrs. Binion would have to continue payments under the contract. Sometime later, Mr. Lewis called me and told me that Mr. and Mrs. Binion and Mr. Bullard wished I would prepare such a contract, which I did."

This testimony clearly reflects that Mr. Lewis was advised that the contract could not be assigned without the consent of the owner. The testimony does not reflect that appellant explained to the complainant, Mr. Bullard, that it would be necessary to secure the consent of Lillie Shapiro before the contract could be assigned. Yet, with this knowledge, the appellant, Mr. Paul E. Lewis, permitted a contract to be entered into between the complainant, Mr. Bullard, and the Binions, taking the amount of Two Thousand Dollars ($2,000.00) and permitting the Binions, without any protection to Mr. Bullard, to take and carry away Mr. Bullard's certified check.

Upon these facts, the Board of Real Estate Examiners revoked appellant's broker's license upon a finding made that this appellant had violated §6373-42, paragraph 20, GC, which reads as follows:

"* * * having offered real property for sale or for lease without the knowledge and consent of the owner or his authorized agent or on any terms other than those authorized by the owner or his authorized agent * * *."

We have carefully examined the briefs of counsel and find that the real question involved in this case is the construction of the word "owner" as contained in subparagraph 20 of §6373-42 GC. The appellant is contending that the owners of the property were the Binions, and that the sale was authorized by the owners. In a technical sense the appellants are correct in their conclusion. When used in this manner ownership does not necessarily imply an absolute unqualified or uncondi-

tional right to the entire thing, but may embrace a lesser estate or interest. 32 O. Jur. 628, Section 23. **Baltimore & Ohio R. R. Co. v. Walker, 45 Oh St 577, 585.** But when applied to land it usually denotes a fee simple estate. **McCarthy v. Hansel, 4 Oh Ap 425.** The meaning of the word depends upon the connection in which it is used. In the case of Bowen v. John, 201 Ill. 292, 66 N. E. 357, an interpretation of the word "owner" was involved as it was used in a will. At page 358 of 66 N. E. it is said:

"The term 'owner' when applied to real estate, means an estate in fee simple. Illinois Mutual Ins. Co. v. Marseilles Manf. Co., 1 Gilm 236."

In Eardley v. Burt, et al., 182 S. W. 721, the Court was considering the word "owner" as applicable to the Mechanics Lien Law. On page 724 the Court states as follows:

"But if M. H. Burt only had a contract to purchase, he was not the owner within such statutes."

See also Hardin v. Chattanooga Southern Railway Company, 113 Ga. 357, 38 S. E. 839; Phillips v. Hardenburg, 80 S. W. 891; Warren, et al. v. Lower Salt Creek Drainage District, 316 Ill. 345.

In 37 O. Jur. Section 288, it is said:

"As a general rule, words of a statute, in common use or other than terms of art or science, will be construed in their ordinary acceptation and significance and with the meaning commonly attributed to them. Indeed, the intention of the Legislature to use statutory phraseology in such manner has even been presumed. Ordinarily, such words are to be given their natural, literal, and full meaning. These rules are applicable unless such an interpretation would be repugnant to the intention of the Legislature, as plainly appears from a construction of the entire statute."

And continuing at Section 290:

"Courts should be slow to impart any other than their natural and commonly understood meaning to terms employed in the framing of a statute. Too narrow a construction of terms is not favored. Statutory phraseology should not be given an unnatural, unusual, strained, arbitrary, forced, artificial, or remote meaning which may, in its last analysis, be technically correct but wholly at variance with the common understanding of men. A technical construction of words in common use is to be avoided. Nor should the Legislature be regarded as having used terms in a statute in an obsolete sense."

Also, at Section 275 of 37 O. Jur. it is said:

"A construction adopted should not be such as to defeat the obvious intention of the legislature or do violence thereto,

.wholly or partially, but rather one which would carry such intention into effect."

We are therefore of the opinion that as a general rule words of a statute in common use will be construed in their ordinary acceptation and significance and with the meaning commonly attributed to them. Such words are to be given a natural, literal and full meaning unless such interpretation would be repugnant to the intention of the Legislature as plainly appears from the construction of the entire statute.

. A careful examination of §6373-42 et seq, GC, discloses that it is designed to protect the public in its dealings with real estate agents, and paragraph 20 discloses further that its purpose is to protect the owners of property from having their property exposed for sale without their knowledge or consent and for the further protection of the person intending to make the purchase. The facts in this case clearly demonstrate the manner in which the purchaser may be damaged. If the fee owner had had knowledge of this transaction he could have informed the prospective purchaser and the real estate agent of his objections to this sale. Had the statutory requirements been met it is apparent that the sale would never have been negotiated, as the sale was made upon terms by which the purchaser was to acquire the fee upon the completion of his contract. The appellant urges that he acted upon the advice of counsel and that the violation was not wilful; therefore he should not have been found guilty, but the statute does not require that it be a wilful violation. A mere showing of the commission of the act is sufficient to sustain the ruling of the Board. All the surrounding facts and circumstances may, however, be considered by the Board in determining the penalty to be imposed. The record shows that the appellant was not ignorant of the facts complained of but only of the law applicable thereto. The ignorance of the law cannot be a valid excuse. Real estate brokers are required to know the law applicable to their business, being subject to an examination conducted by the real estate board before being eligible for a license.

The appellant also raises the question of the legality of the restriction in the contract with reference to an assignment without the consent of the grantor, but this is not an issue in this case. Under their contract the Binions had the right to acquire title to the property under consideration, but the same was never exercised and therefore they never became the owners. The only finding of the Board is that the appellant violated the section of the Code by having "offered real property for sale or for lease without the knowledge and consent of the owner or his authorized agent, or on any terms other

than those authorized by the owner or his authorized agent." This finding was affirmed by the Common Pleas Court and we are of the opinion it was fully sustained by the evidence.

None of the errors assigned are well made and the judgment will be affirmed.

HORNBECK and WISEMAN, JJ, concur.

### ON APPLICATION FOR REHEARING

No. 2102.   Decided January 9, 1951.

By THE COURT:

This is an application for rehearing in which the appellant appears to misconstrue the charge against him and of which he was found guilty. He was not being charged with having made an illegal sale as urged in his brief, but only of having offered real property for sale in violation of §6373-42 Par. 20 GC.

The record discloses that the property involved herein was offered for sale by means of an advertisement in a local newspaper and to which Mr. Bullard responded. It reveals further that the appellant's attorney gave him no advice on this matter but only on the legality of the sale of the land contract. He consulted counsel after the offer to sell had been made but before completion of the same. Therefore it cannot be said that he acted upon the advice of counsel. We find no denial of due process of law to this appellant because the finding of facts by the Real Estate Board is final since an appeal from a ruling of the Board may be had on questions of law only and not on law and fact. The Board was not acting as a court vested with judicial powers within the meaning of the Constitution. It was created by the Legislature as an administrative agency for the purpose of administering the laws applicable to real estate brokers and it was in the exercise of this power that the order complained of was issued.

In State, ex rel. v. Harmon, 31 Oh St 250, it is said:

"The authority to ascertain facts, and to apply the law to the facts when ascertained, appertains as well to the other departments of government as to the judiciary."

In Fassig v. State, ex rel. Turner, 95 Oh St 232, that power which may be conferred upon tribunals other than courts is well defined in syllabus 2:

"The line which separates power to make laws from power to interpret and apply laws is not exactly defined. The legislature cannot confer upon tribunals, other than courts, powers which are strictly and conclusively judicial. But in providing for the enforcement of its enactments, it may

clothe administrative officers with power to ascertain whether certain specified facts exist, and thereupon to act in a prescribed manner, without delegating to such officers legislative or judicial power within the meaning of the constitution."

In the case of City of Cincinnati v. Wright, 77 Oh Ap 261, the Court held that a license to operate a motor vehicle may be revoked by an administrative officer without judicial interference in the proper exercise of such power, syllabus 3 providing:

"The granting, suspension, or revocation of licenses to operate motor vehicles are legislative and executive functions, and power to grant, suspend and revoke can be conferred upon administrative officers without judicial interference, in the proper exercise of such power. Such power has been conferred upon the registrar of motor vehicles by §§6296-17, 6296-18a, 6296-18b, GC and cognate sections of the General Code."

See also 8 O. Jur. 308, Section 204; 42 Am. Jur. 449, Section 116.

The application will be denied.

MILLER, PJ, HORNBECK and WISEMAN, JJ, concur.