In re TACO EDS, INC., Debtor.

**Robert KOHLER, Plaintiff,**

v.

**TACO EDS, INC., et al., Defendants.**

Bankruptcy No. 84–0018.

(Related Case: 84–00039).

United States Bankruptcy Court,
N.D. Ohio, W.D.

Aug. 1, 1984.

Norman Abood, Toledo, Ohio, for plaintiff.

Joseph D. Shibley, Toledo, Ohio, for defendants.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court for Trial on the Complaint for Injunction and for Hearing on the Motion for Relief From Stay. At those proceedings, the Court received the testimony, observed the demeanor of the witnesses and exhibits offered by the parties, and heard the arguments presented by counsel. The Court has reviewed the evidence and has considered both the Pre-Trial briefs and closing arguments. Based upon that review and for the following reasons the Court finds that the Defendant is entitled to Judgment on the Complaint, and that the Motion for Relief From Stay should be DENIED.

### FACTS

The Debtor's Chapter 11 Petition was filed on January 9, 1984, as a part of an agreement between itself and the Securities Exchange Commission. The Commission had been investigating the Debtor with regards to securities violations and had petitioned the United States District Court for an injunction against the further sale of the Debtor's securities.

At the time the Petition was filed, a store known as the "Bonito Burrito", located at the Franklin Park Mall in Toledo, Ohio, was open and doing business under the Debtor's name. On January 19, 1984, the Plaintiff filed this adversary action, wherein he claimed ownership of that establishment. During the pendency of the Debtor's case, the business has continued to operate under the supervision and control of the Court appointed Trustee. However, on May 1, 1984, this Court converted the case

to a proceeding under Chapter 7 of the Bankruptcy Code. Inasmuch as continued operation of the store appeared to be in the best interest of the creditors, the Chapter 7 Trustee continued to operate the business. He has also undertaken the litigation which is presently before the Court. At the present time, the store remains open.

Prior to the conversion of the Chapter 11 Petition, the then Debtor-In-Possession was engaged in the operation of several Mexican restaurants, including the "Bonito Burrito". Its business concerns also included the manufacture, production, and provision of food and supplies attendant to the operation of such restaurants. At some time during the middle months of 1983, the Debtor received an offer to locate one of its stores in the Franklin Park Mall. After accepting that offer, the Debtor sought out the Plaintiff to perform the necessary construction. The Plaintiff was a general contractor who had been retained for a number of other projects in the Franklin Park Mall. In addition the Plaintiff owns at least one restaurant of his own, that being located in El Salvador.

The Plaintiff began work on the Debtor's store without reducing any agreement between himself and the Debtor to writing. As work progressed, the Plaintiff incurred significant expenses of both time and material for which no payments from the Debtor were received. At some time during October, 1983, the Debtor recognized its serious financial difficulties as well as its inability to finance the completion and operation of the new store. Nevertheless, the Debtor was seriously interested in maintaining the Franklin Park location as an enterprise under its business name. Accordingly, the Debtor and the Plaintiff entered into negotiations regarding an arrangement for the ownership and management of the "Bonito Burrito". They also discussed the formation of a partnership that would operate a second Mexican restaurant at another location in Toledo. Although the parties are in agreement that the contemplated partnership was never consumated, they are in dispute over the ownership of the Franklin Park store. The

Plaintiff has claimed that the Debtor entered into a contract which effectively transferred ownership of the store to him. On the other hand, the Trustee asserts that such a contract never reached fruition and that the business operations are part of the Debtor's estate.

The Plaintiff has offered testimony which indicated that at the time the Debtor realized its inability to complete and open the store, it entered into a contract with him to transfer ownership of the business. The purported contract called for the Plaintiff to assume responsibility for completion of the store's construction and the provision of any additional financing that would be required to maintain an ongoing operation. In return, he would receive "ownership" of the enterprise. The Plaintiff also indicated that the contract called for the Debtor to provide the employees, training, food, equipment, and other related materials in exchange for a percentage of the business profits. The terms of this accord were never reduced to writing and were offered into evidence solely through oral testimony, some of which was hearsay in nature.

In addition to his testimony as to the existence and execution of a contract, the Plaintiff offered evidence of his belief in the viability of the pact. This evidence showed that he incurred additional expenses subsequent to the completion of the store and continued to incur such expenditures throughout the time the business was open. The evidence further indicated that no one raised any discrepancies with a newspaper advertisement which reflected the Plaintiff as the owner of "Bonito Burrito". The Plaintiff also offered the testimony of the Mall Manager, who indicated that the lease for the space which had been previously signed by the Debtor had been subsequently presented and signed by the Plaintiff. It should be noted, however, that neither lease was executed by the Mall.

The Defendant-Trustee presented the testimony of the Debtor's former manage-

ment personnel regarding the company's involvement with the "Bonito Burrito". These witnesses indicated that from the inception of the opportunity to locate a store at Franklin Park until the time this Court converted the Debtor's Petition, the store was and remained a company project. There was never any reference within the corporation to the fact that the "Bonito Burrito" belonged to the Plaintiff. The Trustee supported this testimony with evidence that the store's manager was hired by, trained by, and was responsible to the Debtor's headquarters in Defiance, Ohio. There was also evidence that the Plaintiff had little, if any, ongoing imput into the hiring of the employees, food preparation, menu consultation, and management decisions. Further evidence showed that the Plaintiff did not manage or control the daily receipts, payroll, payment of business expenses, bank accounts, or the books and ledgers. Indeed, the Plaintiff testified that he made himself aware of receipts of the restaurant by references to the Malls records, which are used to determine the amount due the Mall on its percentage lease. Moreover, the evidence indicated that the Plaintiff's only meaningful involvement with the business commenced after the filing of the Petition.

## LAW

█ In order to prevail in these actions, the Plaintiff-Movant must demonstrate that a contract between himself and the Debtor was consumated. The most basic requirement for the formation of a contract is a meeting of the minds or mutual assent to the terms of an agreement. *S & J Associates v. Jay's Trucking Co., Inc. (In re Jay's Trucking Co., Inc.)*, 26 B.R. 73 (Bkcy.E.D.Va.1982). In order to achieve a meeting of the minds there must be both an offer and acceptance of the contract's provisions. *Noroski v. Fallet*, 2 Ohio St.3d 77, 442 N.E.2d 1302 (1982). Both parties must have a clear understanding of the terms of the agreement and the intention to be bound thereby before an enforceable contract is created. *Arnold Palmer Golf*

*Co. v. Fuqua Industries, Inc.*, 541 F.2d 584 (6th Cir.1976).

The Plaintiff has asserted that one of the terms of the purported contract involved "ownership" of the business. While the determination as to the existence of a contract must necessarily precede an interpretation of its terms, it is helpful to review the meaning of "ownership" and what the law recognizes as constituting this form of property rights. Ownership has been defined as "[t]he Collection of rights to use and enjoy property, including right to transmit it to others... The complete dominion, title, or proprietary right in a thing or claim..." Black's Law Dictionary 1260 (Rev. 4th ed. 1968). It has also been defined as the right to exercise dominion over property, either corporeal or incorporeal, and to do with as the owner pleases. *Trapp v. Steubenville Bldg. & Loan Ass'n. Co.*, 20 Ohio Op. 157 (Com.Pl.1941). It does not, however, necessarily imply an absolute unqualified or unconditional right to the entire thing, and may embrace a lesser interest. *Lewis v. Carpenter*, 60 O.L.A. 119, 100 N.E.2d 874 (Ct.App.1951).

█ In the present case, there is no dispute that if, in fact, a contract came into existence, it was an oral contract. The record reflects that the only evidence as to the formation of the agreement was the testimony of the Plaintiff. He related the circumstances that precipitated the alleged agreement, the offer made by the Debtor's principals, and his acceptance of their terms. This testimony, however, was directly contradicted by the testimony of other officers of the Debtor, to the effect that there was never any corporate intent to contract for ownership of this store. Even if the Court were to discount the unreliability of the hearsay allowed into evidence, the Trustee's evidence counterbalances any weight that could be given to the Plaintiff's testimony. In the absence of any corporate records or actions to support the assertion that the Debtor had surrendered ownership of this store, there is nothing on which the Court could find that there was a meeting of the minds between the parties.

Without such evidence the Plaintiff cannot be said to have sustained his burden of proof and must therefore, be denied the relief sought.

Nevertheless, if it is assumed that there were representations made to the Plaintiff that could have constituted a valid offer, the testimony of the Debtor's officers indicate that such an offer was not backed with *bona fide* contractual intent. As previously indicated, the intent to be bound by a contract is a necessary prerequisite to its formation. This intent must be ascertained from the facts and circumstances surrounding the transaction. In this case, the Debtor's inability to complete the store along with its continued desire to have a store at that location creates a motive for fraud, a fact which cannot in view of the Debtor's history, cannot be ignored. Fraudulent representations intrinsically belie the presence of contractual intent. However, in the absence of any fraudulent dealings, the testimony alone established the fact that there was never any contemplation by the corporate officers that store ownership would be transferred in exchange for its completion. Therefore, any representations that may have been interpreted to be an offer were undermined with the absence of contractual purpose. Although the Plaintiff may, as evidence by his actions, have believed there to have been a transaction between himself and the Debtor, this belief does not give rise to an enforceable agreement.

If it is assumed even further that there was a contract by which the parties intended to be bound, the Plaintiff has not sufficiently shown that complete "ownership" of the property was one of the contract's provisions. As previously indicated, ownership involves the right to exercise dominion and control which, in the case of a business, would be the participation in some activity customarily associated with the command of activities or the title to business property. In the present case, however, the Plaintiff did not routinely inspect the accounting records, participate in management decisions, or exercise any control over business activities. Most significantly, he did not receive nor did he make any assertive demand for his portion of the business' profits. Although the putative contract called for the Debtor to assume responsibility for the management of the business, it would still be expected that an owner would, in at least some respect, oversee the business activities and would take steps to preserve the integrity of his ownership interests. However, in view of the Plaintiff's failure to show any indicia of his ownership interest, and the fact that most of the property and supplies used by the business in its activities belonged to the Debtor, it must be concluded that the Plaintiff has not shown that the ownership interest he asserts was one of the terms of the contract.

Based on the foregoing analysis, it must be concluded that the Plaintiff is not entitled to the judgment sought in his Complaint nor the relief sought in his Motion. He has failed to carry his burden of proving that a contract, with all the requisite elements attendant thereto, came into existence. He has also failed to prove that the operative term of the purported contract was, in fact, a part of the agreement. Without having met his burden on those issues the Court cannot hold, either as a matter of law or equity, that the Plaintiff is the owner of the business.

In reaching these conclusions the Court has considered all the evidence and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

It is ORDERED that Judgment on the Complaint be, and is hereby, entered for the Defendant.

It is FURTHER ORDERED that the Motion for Relief From Stay be, and is hereby, DENIED.